THE DORIS ECKHOFF.

(*District Court, S. D. New York.* February 21, 1890.)

COLLISION—LIMITATION OF LIABILITY—APPORTIONMENT OF LOSS—CARGO.

Where several vessels are all in fault for collision, the damages should be divided between them *pro rata,* subject to the limitation of liability prescribed by section 4283 of the Revised Statutes. If the amount recoverable from either vessel is less than her share of the loss of the cargo, such amount should be first applied on account of the cargo; and the other vessels or their owners are chargeable *pro rata,* up to their limit of liability, for the balance of the whole loss of cargo belonging to third persons not in fault, and for their proportion of the loss of any other vessel; but the latter, to make good the loss of cargo, must apply thereto any moneys coming to her for her own loss, so far as necessary to make good her share of the cargo loss. Either vessel thus paying more than her share of the whole loss is entitled to the benefit of the judgment against any other party, up to the limit of his liability, for any excess paid in the first instance on his account.

In Admiralty. Settlement of decree.
*George A. Black,* for libelants.
*Goodrich & Deady,* for the Eckhoff.
*James W. Osborne,* for Hughes and Sherman.

BROWN, J. By the collision between the bark Doris Eckhoff and the schooner Flint, the Flint and her cargo were sunk and damaged. The damages have been ascertained as follows: Damage to the Flint, $4,665; damage to the cargo, $8,205.26; master's personal effects, $118.97; damages to the Eckhoff, $333.74. The Flint was in tow of the tug Stevens; the Doris Eckhoff was in tow of the tug Carter. All four vessels were found in fault. There was no damage except to the Flint and her cargo, and $333.74 damages to the Eckhoff; and the damages were ordered to be apportioned. The tugs, being in custody in the eastern district, were not joined in this libel with the Eckhoff; but their owners, Hughes and Sherman, were afterwards made co-respondents, under the fifty-ninth rule. All claim the benefit of the limitation of liability provided by section 4283, Rev. St. U. S. The owners of the Eckhoff and the Carter, not being privy to the faults of those vessels, are entitled to that limitation, namely, to the extent of their interest in those vessels. It is not necessary that they should pay the money into court, or make any surrender of the vessels, having set up the defense by answer. *The Scotland,* 105 U. S. 24, 33, 34; *The Great Western,* 118 U. S. 526, 6 Sup. Ct. Rep. 1172. The value of the Eckhoff, as determined, is $7,666.26. The value of the Carter is fixed at $2,430, of which Hughes' five-eighths interest is $1,518.75, and Sherman's three-eighths interest is $911.25. Hughes is also entitled to a similar limitation of his liability in respect to the Stevens, whose value is $505. His half interest in her is $252.50. Sherman, the owner of the other half interest in the Stevens, was master of her at the time of the collision, and chargeable with her fault; and he therefore is not entitled to any limitation of his liability under the statute, as respects her share of the loss. In the apportionment of damages, under these circumstances, and in the

adjustment of the claims of the parties *inter sese*, the following principles must be kept in mind:

1. The cargo owners, not being in fault, are entitled to be first paid in full. All the vessels and their owners are ultimately jointly and severally liable *in solido* for this claim, (*The Atlas*, 93 U. S. 302,) subject only to the statutory limitation of liability as respects each vessel, so far as applicable.

2. All four being in fault, each tug and tow, for the purposes of apportionment, may be treated as a single vessel, chargeable with half the entire loss; or the Eckhoff and the Flint, the two colliding vessels, may each be considered as chargeable with one-half the damages, with a right in both cases by each vessel to a *pro rata* contribution from the several tugs. If all were responsible, and there was no limitation of liability, the result would be that each of the four vessels would be chargeable with one-fourth of the total damage, *i. e.*, viz., $3,330.83, and interest. In consequence of the statutory limitation, however, the owners of the Carter are liable as respects her only for $2,430 and interest, and a part of the other shares may not be collectible. In either case the remaining vessels or their owners must make up *pro rata* any such deficiencies from the other vessels or owners, not exceeding, however, the statutory limitation. Whatever portion of the one-fourth payable by each is not available by reason of inability to collect it, or by reason of limitation of liability, must be borne *pro rata* by the remaining vessels or their owners, and so on. Interest should be continued from the date of the commissioner's report, computed upon the principal sums only, (see decree in *The City of New York*, filed Feb. 24, 1886;)[1] and the owners who limit their liability are chargeable with interest from March 8, 1886, the date of the collision.

3. Upon further evidence, taken before me since the assessment of damages, it appears that the libelants, in a suit *in rem* in the eastern district against the tugs Carter and Stevens, have recovered by default a decree against the Carter, under which they received, on January 10, 1890, the remnants of the proceeds of sale of that tug, viz., the sum of $2,004.24, besides their taxable costs of action. That sum is equivalent to $1,629.46, as of March 8, 1886, the date of the collision. Of this sum, five-eighths, or $1,018.41, inures as a credit to Hughes, and the rest, viz., $611.05, to the credit of Sherman. As respects the Stevens, no decree has yet been entered in that action, nor any collections made from her; and I have, therefore, nothing at present to do with the proceeds of the Stevens in the registry of the eastern district, not as yet adjudicated. The decree under which the proceeds of the Carter were obtained did not direct any particular application of the money. The evidence on the libelants' part before me shows that the recovery of that fund was the result of three years' litigation, in which the reasonable value of the legal services, and the necessary legal expenses over the taxable costs, were $1,200. No counter-testimony was offered on that point. The libelants claim to

[1] Not reported.

have applied $1,200 of the fund recovered to the payment of those expenses. This cannot be allowed in a suit like this, for the reason that the money is the proceeds of the property of Hughes and Sherman, who, as respects the Carter, are entitled to a limitation of their liability and a credit for the whole fund. The litigation for that fund was not caused by them, nor was it for the benefit of either of them. It was a matter of indifference to them, so far as appears, whether the fund should be applied on the libelants' lien or on the liens for supplies. As against them, therefore, the libelants' legal expenses in securing the fund are no equitable charge or lien. They are entitled to have the whole amount recovered, less the taxed costs, applied in diminution of their statutory limit of liability; and the whole must therefore be so applied. The litigation for the recovery of that fund was, however, in part for the benefit of the Doris Eckhoff, as well as the libelants. If Hughes and Sherman had been solvent and responsible, that litigation would have been of no benefit to the Doris Eckhoff, since it would be immaterial to her whether their shares of the loss should be collected out of the proceeds of the tug, or upon execution against them personally. From what has been stated by counsel before me, I may assume that Hughes is responsible, there being no evidence to the contrary, but that Sherman is not. To the extent of Sherman's interest, viz., three-eighths of the Carter, the expenses may be deemed incurred for the joint benefit of the Doris Eckhoff and the libelants, and therefore shared between them. This can be secured by allowing the Flint to apply three-eighths of the $1,200, viz., $450 of the amount recovered from the Carter, to her own loss, after the division of damages between her and the Doris Eckhoff, instead of before. The latter has no equity against this method, and it will satisfy the right of Hughes and Sherman to have all the proceeds, as their property, applied upon the damage claims. $450, received January 10, 1890, is equal to $372.36 as of March 8, 1886. The residue of the $1,629.46, recovered as of that date, viz., $1,257.10, must inure equally to the benefit of the Flint and the Doris Eckhoff. If Sherman was responsible, he and the Doris Eckhoff would each only be chargeable with one-third of the general loss, after crediting the amounts collected from Hughes. As he is not responsible, the decree against the Doris Eckhoff may be taken in a different form, with the same final result, viz., for half the difference in the total damages on each side, i. e., $6,327.94, less one-half of said sum of $1,257.10; viz., a decree for $5,699.39, with interest from March 8, 1886, less the one-half of any further sums that may be collected from the Stevens, if any, or from Hughes or Sherman personally, under this decree.

As respects Hughes, since he owned five-eighths of the Carter, five-eighths of the $1,629.46, received by the libelants from the Carter as of March 8, 1886, are applicable towards Hughes' statutory limit of liability of $1,770.62. Applying upon the latter amount five-eighths of the former, viz., $1,018.41, there remain $762.21, for which sum the libelants are entitled to a decree against Hughes, with interest from March 8, 1886; and on payment of that sum, and interest, with his share of

the libelants' costs, so far as allowed herein, Hughes is entitled to be exempted from further liability under the statute.

As against Sherman, the libelants are entitled to a decree for one-third the total loss, viz., $4,440.09, less the said sum of $611.05, already received to his credit from the Carter, and less, also, one-third of the sum already received from the Carter on account of Hughes, or $339.47; that is, to a decree for $3,489.27, with interest from March 8, 1886, less one-third of any further sum that may be recovered from Hughes under this decree; and to a further decree for one-half of any deficiency uncollected from the Doris Eckhoff on her share of the damages under this decree.

As the libelants sue for both themselves and the cargo owners, and the latter have not personally intervened, and as there is no evidence that the libelants are not responsible, and able to pay their share of the whole loss, there cannot be any decree against the Doris Eckhoff in this suit in favor of the cargo owners, beyond the amount above specified, with interest, which will be held payable on account of cargo. The cargo owners must look to the libelants for the balance of their claims. No decree can be entered in this suit in their favor against the libelants personally. A decree may be prepared in accordance herewith, containing a further provision, also, that the Doris Eckhoff, on paying for any deficiency uncollected of Hughes and Sherman under this decree, shall be entitled *pro tanto* to the benefit of this decree as against them. The costs up to the interlocutory decree are divided. *The Warren*, 25 Fed. Rep. 782. The libelants are entitled to recover their subsequent costs.