CASE 16—Action by John Diebold against the Kentucky Traction Company for an Injunction.—Dec. 17.

# Diebold v. Kentucky Traction Co.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

FROM A JUDGMENT DISMISSING THE PETITION, PLAINTIFF APPEALS. AFFIRMED.

TRUNK RAILROAD—MEANING OF TERM, MUNICIPAL CORPORATIONS— FRANCHISES.

Held:   1. An electric railroad company authorized to perform the duties of a carrier of freight and passengers between two cities in different States and all intermediate points is a trunk railway within Const., section 164, declaring that no city shall grant any franchise to street railways, gas, water, or certain other corporations, except to the highest and best bidder therefor, but that the section shall not apply to a trunk railway.

C. H. SHEILD, ATTORNEY FOR APPELLANT.

1. It is alleged and admitted by the pleadings in this case, that the city of Louisville, by the ordinance granting the franchise to the defendant company, has never advertised the franchise for sale, has never received bids therefor publicly, has never awarded it to the highest and best bidder, and that the city council has not undertaken to grant a franchise for a limited period of twenty years as prescribed in the Constitution, but has granted an unlimited and indefinite franchise.

2. The defendant contends that it is a "trunk railway," and therefore comes within the exception to the constitutional provision, section 164, which exception provides, "This section shall not apply to a trunk railway."

3. Our contention is, that in so far as the defendant company undertakes to operate a railroad over the streets of the city of Louisville by reason of the franchise granted it by the city under the ordinance, it is not a trunk railway, but is, technically, in every detail and particular, a street railway with street railway privileges, and the franchise granting it street railway privileges, even though it should be generally a trunk

Diebold v. Kentucky Traction Company.

railroad as to all other localities, in so far as it exercises the privileges of a street railway within the limits of the city of Louisville, it is within the prohibition of the Constitution.

HELM, BRUCE & HELM, W. B. THOMAS, D. W. SANDERS AND J. G. SACHS, FOR APPELLEE.

1. The court will find an agreed statement of facts in this case to the effect that the defendant is a lawful corporation, duly created and organized under article 5 of chapter 32 of the Kentucky Statutes, and under section 768, subsection 5 of said article, such company, among other powers, possesses the following, to-wit:   "To construct its road upon or across any watercourse, private or plank road, highway, street, lane or alley, and across any railroad or canal . . . and in case the road is constructed upon any street or alley, the same shall be upon such terms and conditions as shall be agreed upon between the corporation and the authorities of any city in which the same may be, but such road shall not be constructed upon any public street or alley until compensation shall be made by the corporation therefor to the owner of the property adjoining such street or alley, and opposite where such road is to be constructed either by agreement or in the manner provided by law."

2. An ordinance purporting to grant to the Kentucky Traction Company the right to run over certain designated streets in the city of Louisville, and prescribing how the rails should be laid, and what speed should be adopted, and how the poles and wires for the electric current should be erected, etc., was passed and approved, June 4, 1903.

3. The fallacy of plaintiff's entire position is due to the fact that he treats this ordinance as the only foundation of defendant's right to run along the streets, and hence he treats this as a municipal franchise which he says, under the Constitution, should have been offered for sale and sold to the highest bidder, when the truth is, that this ordinance is not the foundation of the defendant's right to run on the streets of Louisville, although it is an exercise of the city's right of *regulation of a franchise granted by the State*, and therefore section 164 of the Constitution has no bearing upon it.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

The appellant, John Diebold, is a citizen of Louisville, Ky., and owns real property fronting on Sixteenth street, which

is one of the highways of that city.    The appellee, The Kentucky Traction Company of Louisville, is a railroad corporation organized under the general statutes of Kentucky, having power and authority, under its charter, to construct and operate an electric line from Louisville, Ky., to Nashville, Tenn., and to be a common carrier of both passengers and freight, when in operation.    As a necessary prerequisite to the building of the proposed line, appellee secured, from general council of the city of Louisville, an ordinance granting to it a right of way from a point on its southern boundary, along and over parts of certain named streets and alleys, to Center and Jefferson streets.    One of the highways over which the franchise granted by the municipality extends is that part of Sixteenth street upon which appellant's property fronts.    Conceiving that the franchise granted to appellee was void, as being violative of the provisions of section 164 of the Constitution, which requires that all franchises included within its language be sold to the highest bidder, appellant instituted this action for an injunction to prohibit the building of the proposed line along Sixteenth street in front of his property.

The pleading in this case aptly raises the one question involved in the record, whether or not the proposed road is a trunk railroad within the meaning of section 164.    If it is, appellant has no cause of action; if it is not, the injunction prayed for should have been awarded.    Trunk railroads are specifically excepted from the provisions of section 164. The opinion of the learned chancellor below fully meets our views upon the question for adjudication, and it is adopted as the opinion of the court, and is as follows:    To decide the questions of law which arise on this motion, two sections of the Constitution of Kentucky have to be considered, to wit,

sections 163 and 164.    Section 163 is as follows:    "No street railway, gas, water, steam heating, telephone or electric light company within a city or town shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus, along, over or across the streets, alleys or public grounds of a city or town without the consent of the proper legislative bodies or boards of such cities or towns being first obtained; but when charters have been heretofore granted conferring such rights and work in good faith been begun thereunder, the provisions of this section shall not apply."    Section 164:    "No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege or make any contract in reference thereto for a term exceeding twenty years.    Before granting such franchises or privilege for a term of years such municipality shall first after due advertisement receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids.    This section shall not apply to a trunk railway."

The question to be decided sharply on this motion is whether the appellee, having its termini in Louisville and Nashville, under its original and amended charter, is a street railway, and therefore within the constitutional prohibition against such a grant as that contained in the ordinance referred to, or a trunk railway, and thereby expressly excluded by section 164 from the prohibitory operation of the two sections of the State Constitution above quoted.    Whether a railway is a street railway or a trunk railway, it will not be contended, we apprehend, depends on the motor power employed by it in propelling its rolling stock over and along its tracks.    It certainly can make no difference

whether the cars of a railway company are propelled by the agency of steam, or gasoline, or of electricity, compressed air, liquefied air, or any other agency which science and the inventive genius of man may in the future bring into use. Rather the character of a railroad company is determined by the nature and extent and limits put upon its operation by law or otherwise, and by the character and object of its corporate creation as shown by its charter. By the original charter of the Louisville & Nashville Railroad, it was authorized and empowered to lay its tracks and propel its cars thereon between Louisville and Nashville, and was authorized and empowered, just as the appellee in this case is authorized and empowered, to transport passengers, freight, and express matter to all immediate points, towns, cities, and counties between Louisville and Nashville, and to erect its depots to accomplish its corporate purposes, just as the appellee here is authorized and empowered to do. The only difference in character, legal or otherwise, between the appellee and the Louisville & Nashville Railroad, under its charter, is that one has steam for a motor power, and the other has electricity; both are interurban and interstate railroad corporations. It is difficult to understand what the phrase "a trunk railway" clearly means, if it does not mean an intreurban and an interstate railway for commercial purposes.

Appellant insists that appellee is a street railway within the meaning of section 163 of the State Constitution, above quoted. It will be observed at a glance that the framers of section 163 of the State Constitution intended that the restricted character of the street railway, as a strictly local intramural street car company, should be understood as such by the classification and association of the street railway referred to in that section with gas companies, water compan-

Diebold v. Kentucky Traction Company.

ies, steam heating companies, telephone companies, and electric light companies, all of which are strictly intramural and essentially and exclusively local, in their scope and operation in cities, towns and other municipalities.    The fact that a railroad company, whether operated by electricity or steam, such as the Chesapeake & Ohio Railroad Company, the Illinois Central Railroad Company, the Louisville & Nashville Railroad Company, or an interurban or interstate railroad company, all having the same corporate purposes, and performing the same important public functions for the convenience and good of the public, in transporting passengers, freight, and express matter, for the advancement of commerce between towns and cities within a State, or between towns and cities within different States, is obliged, in order to accomplish the corporate purposes of its creation, to have terminal points, as passenger or freight depots, to reach which it is necessary to lay its tracks along the streets within a city or town, does not make such railroad company a street railway, and impress upon it a local, intramural character, such as is possessed by gas, water, steam heating, and electric light companies, enumerated in section 163 of the State Constitution, above quoted.    If a railroad company, whether operated by steam or electricity as a motor power, which lays its tracks and connects in commercial relationship different towns, cities, counties and other municipalities within a State, or cities of different States, be not a trunk railway, then it is difficult to understand what a trunk railway is.    We have examined all the recognized authorities upon railroads and railways, and have been unable t゜ find, in any text book or decision, the phrase "trunk railway," or anything that approaches the same.    In Elizabeth & Big

Sandy R. R. v. Ashland, etc., Street Railway Company, 96 Ky., 355, 26 S. W., 181, the court said: "It is urged, however, that the appellee (the street railway company) is not a railroad company in the meaning of the section of the Constitution quoted. We think, whatever may be said of street railways in general, that the charter of this company puts it in the class indicated by that section. The railway was to connect two cities. It might use steam, horse, or other propelling power on said road in the transportation of freight and passengers."

In the case under consideration, the appellee was organized under the general railroad laws of this State, just as a railroad corporation extending its line from the city of Louisville to any distant point in the State of Kentucky, or to any city or point in a distant State (assuming that the foreign States accorded the right or privilege to the Kentucky corporation in or across their territory), would have to be organized. And unless the agency of propulsion adopted by a railroad determines its legal character as a street railway or a railroad trunk line, it is impossible to conceive of any distinction between the two. It seems to us that it is the charter of a company which places it in the class to which it belongs, whether street railway, or trunk railway, and not the character of the motor power which it employs. If, in order to be a trunk railway, the railroad company must have a main line, with branches or feeders branching off from the main stem to adjacent towns, cities, or counties, then the record in this between Louisville and Nashville. We think there can be no case shows that the defendant electric railroad corporation meets this requirement, because it has branches to Owensboro, Russellville, and other points off from its main line

doubt that, giving the phrase "a trunk railway" a rational interpretation, it means, and can mean nothing else but, a commercial railway or railroad connecting different cities within a State, and facilitating commerce between them, or between cities in different States.     And to such commercial railroads, of course, it is not pretended that section 163 of the State Constitution applies.     The term "street railway" as used in section 163 of the State Constitution, means, and can only mean, applying to it a common-sense interpretation, those street railroads which, before the introduction of electricity, used mules and horses as motor power for drawing the street cars over its street car tracks, for the use and convenience of the local public in a municipality—those street cars that run along the streets of a city, picking up passengers here and there, and putting them off at street crossings, and at the termini of the street car companies' tracks within the municipality.     They were created and organized and operated, and such was their character, as defined in their charters, strictly and exclusively for the local convenience of those persons or passengers whose pleasure or business prompted them to go from point to point within the city.     They were never organized or intended for commercial purposes between different cities within a State, or between different cities in different States.     In the case of the Louisville & Portland Railroad Company v. Louisville City Railway Company, 2 Duv. 175, Judge Robertson, after holding that the amended charter of a railroad company was as efficient in establishing its character as its original charter said: "A railroad is for the use of the universal public in the transportation of all persons, baggage, and other freight.     A street railway is dedicated to the more limited use of the local public for the more transient transportation of persons only,

and within the limits of the city. In the technical sense, therefore, a street railway is not a railroad. And we presume that, in this contradistinctive sense, the term 'railroad' was used in the appellant's charter, as amended in 1860. A railroad and a street railroad are, in both their technical and popular import, as distinct and different as a road and a street, or as a bridge and a railroad bridge, and it has been adjudged that the simple term 'bridge' means a viaduct in a road dedicated to common use, and that the qualified phrase 'railroad bridge' means a viaduct constructed for the exclusive use of railroad transportation."

Lewis, in his work on Eminent Domain, vol. 1, section 110a, says: "Railroads now exist in great variety as regards motors and motive power, the size and style of cars and coaches, and the methods of operating and construction. It is probable that these variations will be multiplied in the coming years. It is doubtful whether any permanent and satisfactory classification can now be made. There has been a general concurrence, however, in embracing all railroads in two divisions or classes: (1) Commercial railroads; (2) street railroads. Commercial railroads embrace all railroads for general freight and passenger traffic between one town and another, or between one place and another. They are usually not constructed upon the public streets or highways, except for short distances. Street railroads embrace all such as are constructed and are operated in the public streets, for the purpose of conveying passengers, with their ordinary hand luggage, from one point to another on the street."

In the case of Zehren v. Milwaukee Electric Railway Co., 99 Wis., 83, 74 N. W., 538, 67 Am. St. Rep., 850, 41 L. R. A., 575, the court said: "A street railway in its inception is a

purely urban institution.    It is intended to facilitate travel in and about the city from one part of the municipality to another, and thus relieve the sidewalk of foot passengers and the roadway of vehicles.    It is thus an aid to the exercise of the easement of passage; strictly a city conveyance, for the use of the city, by people living or stopping therein, and fully under the control of the municipal authorities, who have been endowed with ample power for that purpose.

"This strictly urban character of a street railway remained practically unchanged for many years, and during these years the long line of decisions grew up recognizing the street railway as merely an improved method of improving the street and rather as a help to the street than as a burden thereon."

The learned court, after speaking of the introduction of the new motor power, and the enlargement of street cars and the extension of distances, for their operation, even connecting separated cities and villages, said: "Thus the urban railway has developed into the interurban railway, and threatens soon to develop (as in the case at bar) into the interstate railway.    The small car which took up passengers at one corner and dropped them at another has become a large coach, approximating the ordinary railway coach in size, and has become a part, perhaps, of a train which sweeps across the country, from one city to another, bearing its load of passengers, ticketed through with an occasional passenger picked up on the highways.    The purely city purposes which the urban railway subserves have developed into and are being supplanted by an entirely different purpose, namely, the transportation of passengers from city to city, over long distances and stretches of intervening country.    It is built and operated mainly to obtain through

travel from city to city, and only incidentally to pick up a passenger in the country towns. This through travel is unquestionably composed of people who otherwise would travel on the ordinary steam road, and would not use the highway at all."

In the case of Street Railway Company v. Doyle, 88 Tenn. 747, 13 S. W., 936, 9 L. R. A., 100, 17 Am. St. Rep., 933, that distinguished and learned jurist, Judge Lurton, said: "The distinction between the use of the commercial railway and that by a horse railway is so wide and plain that it needs no further comment or illustration. Confessedly, the railway involved in this case (which was an electric railway) is on a line betwwen the two, the equivalent of neither, but partaking largely of the nature of both." The electric railway, in the case Judge Lurton decided, transported passengers only, and this feature Judge Lurton lays emphasis on as distinguishing it from a commercial railway, which carries both passengers and freight, receiving and discharging the same at regular depots or stations established for that purpose.

In the case of Marlott v. Collinsville, C. E. Electric Railway Company, 108 Fed., 313, 47 C. C. A., 345, Judge Grosscup said: "It (referring to the Collinsville Electric Railway Company) was incorporated under the law of March 1, 1872 (Laws 1871-72, p. 625), relating to the incorporating of railroad companies. Its articles of incorporation are on file in the office of the Secretary of State of Illinois in the book of Railroad Records. It took, and unquestionably intended to take under its charter, the powers of a railroad corporation, and among them the railroad corporation right of eminent domain. The fact that its trains are to be operated by electricity, instead of steam, does not affect its place in

the laws of the State as a railroad company.    There is noth-
ing in the acts of 1872 (Laws 1871-1872, p. 625) and 1889
(Laws 1889, p. 223) that restricts railroads therein men-
tioned to the use of steam as a motive power, or prevents ex-
isting steam roads from changing their motive power
to that of electricity.    There is nothing in these acts that
necessarily or fairly excludes its application to electrical
roads as they now exist; indeed, these electrical roads,
in the speed of their trains, in the distance traveled, and in
their capabilities for transportation, are well within the field
of public utilities hitherto occupied by the steam railroads
alone.     We can not conceive that these acts, so far, at least,
as they are reasonably applicable, were not meant to cover
every form of railroad that, in the march of events, answers
the purpose of general transportation; nor do their incidental
functions as street railways, in the towns or cities traveled;
lift them out of the railroad statute, for it has been held that
an elevated road, while intramural in its creation and in its
powers, is within the contemplation of the railroad statute,
and exercises its right of eminent domain by virtue of these
statutes.     Lieberman v. Railroad Company, 141 Ill., 140,
30 N. E., 544.    Indeed, if appellee be not a railroad within the
meaning of the act of March 1, 1872, as modified by the act of
May 27, 1889, and other acts relating thereto, we can find no
authority for its existence as a corporation, or for its exer-
cise of the right of eminent domain. See, also, to the same ef-
fect, the very interesting and instructing case of Mass. Loan
& Trust Company v. Hamilton, 88 Fed., 589 (32 C. C. A., 46);
Williams v. City Electric Street Railway Company (C. C.)
41 Fed., 156; Chicago R. R. Co. v. Milwaukee R. R. Co.,
(Wis.) 70 N. W., 678, 37 L. R. A., 856, 60 Am. St. Rep.,
136, 813.

The foregoing authorities conclusively demonstrate that the defendant electric corporation is not a street railway within the meaning of sections 163 and 164 of the present Constitution of Kentucky, but that it is an interurban and interstate commercial railroad, with all the incidental corporate rights and powers of railroad corporations in this State, whether operated by steam or electricity or any other motive power. After a very thorough examination of the authorities, both text writers and decisions on railroads or railways, while the court has been unable to find a legal definition of the phrase "trunk railway" formulated in any precise words, it is believed that the following is the correct definition of the phrase: "A trunk railway is a commercial railway, whose main line, whether operated by steam, electricity, or any other motive power, connects towns, cities, counties, or other points within the State or in different States, and which railroad company, under its charter, or under the general law, has the legal capacity of constructing, purchasing, and operating branch lines or feeders connecting with its main stem or trunk, the main or trunk line bearing the same relation to its branches that the trunk of a tree bears to its branches, or the main stream of a river bears to its tributaries."

Under section 842a, Ky. St., 1903, it is provided that an interurban electric railroad company, in order to be under the same responsibilities, and to have the same rights, powers, and privileges as railroad corporations existing under the laws of this Commonwealth, must, under its charter, be authorized to construct a railroad ten or more miles in length. The statutory requisite must, of necessity, be incorporated into the above definition of a trunk railway when applied to interurban electric railroad companies in this State. No

reason can be suggested, and none in fact exists, why the phrase "trunk railway," found in section 164 of the State Constitution, should be applied to steam railroad corporations, and not to electric railroad corporations, or to electric railroad companies, interurban or interstate.    Manifestly, it is equally applicable to both.   The phrases "trunk railway" and "main line," whether applied to steam railroad corporations or electric railroad corporations, are essentially synonymous, else both phrases are without meaning.   It is a misconception of the general statutory railroad law of this State, as embodied in article 5, c. 32, Ky. St., to suppose that the grant or regulation contained in the ordinance of the city, defining the streets along and over which the defendant company is authorized to run in order to reach its terminal depot at Green and Center streets of the city of Louisville, is a grant of a franchise or privilege to a street railway, which would be void unless duly advertised for public bids, and accordingly awarded to the highest and best bidder.

The defendant interurban electric railway company was created and organized, as we have seen, under the general statutory railroad laws of this State contained in article 5, c. 32, of the Kentucky Statutes.    It derives its corporate franchises, rights and powers from the State of Kentucky. It does not, and can not, derive any of its corporate rights, franchises, and powers from the city of Louisville.  By subsection 5 of section 768 of article 5 of the Kentucky Statutes, it is provided that all railroad companies created under that act shall, among other things, have the power to construct its road upon or across any water course, private or plank road, highway, street, lane, or alley, and across any railroad or canal; and, in case the road is constructed upon any street or alley, the same shall be upon such terms and conditions as shall be agreed upon between the corporation and

the authorities of any city in which the same may be.    Thus
it will be seen that the right of the defendant company to
lay its tracks along the streets of the city of Louisville is
granted by the Legislature of Kentucky subject only to the
provision—a most reasonable one—that the city shall have
the power of regulating the mode or manner in which the de-
fendant railroad corporation may or shall exercise its cor-
porate franchises, privilege, and right of constructing its road
upon and along the streets of the city.    The city of Louis-
ville has exercised its supervisory power over the mode or
manner in which the defendant railroad corporation should
exercise its statutory corporate franchise of constructing its
road upon and along the public streets of the city, by de-
fining and prescribing the streets and the route along which
the defendant may construct its railroad.    This is all the
city has done in the ordinance.    It has granted to the de-
fendant no franchise or privilege which it did not already
possess under subsection 5, section 768, article 5, c. 32, Ky.
St.    The city of Louisville, by said ordinance, has simply ex-
ercised its power of regulating the mode and manner in which
the defendant corporation may exercise its franchise, derived
from the State, of entering with its tracks within the limits
of the city, and laying the same along the public streets, in
order to reach its terminal depot in the city.

The judgment dismissing the petition is affirmed.