## THE GRECIAN.

## THE CITY OF CHATTANOOGA.

## MERCHANTS' & MINERS' TRANSP. CO. v. OCEAN S. S. CO. OF SAVANNAH et al.

District Court, S. D. New York.

July 25, 1934.

Duncan & Mount, of New York City (Russell T. Mount, of New York City, of counsel), for libelant.

Haight, Smith, Griffin & Deming, of New York City (Charles S. Haight and Wharton Poor, both of New York City, of counsel), for claimant respondent.

PATTERSON, District Judge.

There was a collision at sea between the Grecian and the Chattanooga. The Grecian and cargo became a total loss. The libelant brought suit as owner of the Grecian and also as bailee of the cargo, alleging that the fault was that of the Chattanooga. In the answer the respondent set up certain facts as a partial affirmative defense to the cause of action in behalf of the Grecian's cargo. The present motion is to strike out this part of the answer for insufficiency.

In this defense it is pleaded that the collision was due to fault on the part of the master and crew of both vessels, without privity or knowledge of the owners; that the Grecian and cargo became a total loss; and that the cargo on the Grecian was carried under bills of lading and in accordance with a tariff filed with the Interstate Commerce Commission. The bills of lading contained this provision:

"Sec. 9.(a) If all or any part of said property is carried by water over any part of said route, such water carriage shall be performed subject to all the terms and provisions of, and all the exemptions from liability contained in, the Act of the Congress of the United States, approved on February 13, 1893, and entitled 'An Act relating to the navigation of vessels, etc.,' and of other statutes of the United States according carriers by water the protection of limited liability, and to the conditions contained in this bill of lading not inconsistent therewith or with this section. * * *

"(e) If the property is being carried under a tariff which provides that any carrier or carriers party thereto shall be liable for loss from perils of the sea, then as to such carrier or carriers the provisions of this section shall be modified in accordance with the tariff provisions, which shall be regarded as incorporated into the conditions of this bill of lading."

The tariff filed by the libelant with the Interstate Commerce Commission had a head-

ing, "Rates Include Insurance," and contained the following provision:

### "Insurance

"Property moving under rates named or provided for in this tariff, while in the custody of the water carriers, from the time they receive it from shipper or from prior connecting carriers on docks, piers, wharves, bulkheads, platforms, lighters and/or craft, transfers and land conveyances at ports of loading of their vessels, and while it is waterborne on vessels at and between ports and while it is on docks, piers, wharves, bulkheads, platforms, lighters and/or craft, transfers and land conveyances at port of discharge of vessels, until it is delivered to consignee (but not beyond the free time allowed for delivery as designated by tariff lawfully on file with the Interstate Commerce Commission and/or the United States Shipping Board, as the case may be, nor while held by the water carrier as warehouseman) or until it is delivered to connecting carriers thereat, *is insured*:

"While *Waterborne*, against the perils of the seas, rivers, lakes, bays, canals and other waters, fire, collision, stranding, jettison, pirates, assailing thieves, barratry of the master or mariners, and other like perils or misfortunes that have or shall come to the hurt or damage of the said property or any part thereof, including general average charges and expenses for which the owner may under the maritime law be chargeable.

"While on *docks, piers, wharves, bulkheads, platforms, transfers and land conveyances,* against the risks of fire, lightning, floods (meaning rising of navigable waters), cyclones, hurricanes, tornadoes, windstorms, derailment and/or accident to and/or overturning of the land conveyances, the collapse and/or subsidence of docks, piers, wharves, bulkheads, platforms and/or of any buildings thereon.

"In no event, however, is the property insured against loss, damage or expense caused directly or indirectly by war, strikes, locked-out workmen, persons taking part in labor disturbances, riots, civil commotions, rebellions or insurrections."

It is further alleged that the owners of cargo on the Grecian filed claims against the libelant, and that the libelant paid the claims against "loan receipts." It is alleged, by way of conclusion from these facts, that the libelant waived the Harter Act (46 USCA §§ 190–195) and other rights of limitation and assumed the liability of an insurer of the Grecian's cargo; that consequently the cargo owners had a right of recovery against the libelant for full loss as well as against the respondent; and that the cargo loss must be divided equally between the libelant and respondent. There is no allegation in the answer that the libelant as carrier failed to take out insurance on the cargo or that there was any breach of its warranty of insurance covering the goods.

The libelant conceives that the rights of the parties are the same as in The Chattahoochee, 173 U. S. 540, 19 S. Ct. 491, 43 L. Ed. 801. Where vessels are equally at fault in a collision because of faulty navigation and one carrying cargo is not liable for the loss of cargo because of the Harter Act, its owner in the capacity of bailee of the cargo may recover the entire value of the cargo from the noncarrier, and the latter may recoup one-half of this amount by adding the amount paid for cargo to its other damages.

The respondent, on the other hand, takes the position that by the facts pleaded in this defense the owner of the Grecian waived the Harter Act and all statutes limiting liability, that it was therefore liable directly to cargo, and that consequently the cargo loss must be divided equally between the two ship owners instead of being borne entirely by the respondent in the first instance. The Hudson (D. C.) 15 F. 162; The Doris Eckhoff (D. C.) 41 F. 156, both decided by Judge Addison Brown. The difference is of importance because of the libelant's right to limit its liability to a trifling sum, the Grecian having become a total loss.

It is evident that the question turns on the soundness of the respondent's premise that there was a waiver of the Harter Act by the libelant in favor of its cargo.

The quoted portion of the bill of lading comes to this: That the Grecian shall have the benefit of the Harter Act, but that if the property is carried under a tariff providing that the carrier "shall be liable for loss from perils of the sea," then the provisions of the bill of lading shall be modified accordingly. The applicable tariff, which I treat as read into the bill of lading, declared that "rates include insurance" and provided that property carried under the tariff "is insured" against perils of the sea and other enumerated risks. The tariff does not read and does not mean that the carrier is liable for loss from perils of the sea. By the heading "Rates include insurance" and by the provision that property moving under it "is insured" against perils of the sea and other risks, the tariff imposes on the carrier only the duty of provid-

ing insurance to cover cargoes and of collecting such insurance for the shipper's benefit. If the carrier had failed to effect insurance for the shipper's benefit and the goods were lost by perils of the sea, the carrier's liability to the shipper would be absolute, but such liability would be for breach of warranty as to insurance, not directly for loss from perils of the sea. But it is significant that there is no allegation in the answer that the libelant failed to arrange for insurance. It seems plain therefore that the libelant did not waive the exemptions furnished by the Harter Act; on the contrary the bills of lading expressly accorded such exemptions. The facts pleaded in this defense do not show that the owner of the Grecian was liable to the owners of its cargo on any account.

This conclusion is supported by what was said by Judge Addison Brown in Gross v. New York & T. S. S. Co. (D. C.) 107 F. 516. He held that an agreement by the carrier that a rate "would carry insurance" imposed on the carrier the duty to place insurance on the goods and to collect it for the shipper. See, also, Virginia-Carolina Chemical Co. v. Chesapeake Lighterage & Towing Co. (C. C. A. 2) 279 F. 684, 686.

I do not read Judge Learned Hand's decision in Southern Cotton Oil Co. v. Merchants' & Miners' Transportation Co. (D. C.) 179 F. 133, as opposed to this result. There the carrier offered two rates, the higher an "insured rate," and the shipper chose the higher rate. There was stamped on the bill of lading: "Insured Rate. The freight mentioned in this bill of lading is covered by Marine Insurance while on board the steamers of the Merchants' & Miners' Transportation Company under and in accordance with and subject to the conditions and limitations of policies of marine insurance held by them." After loss of the libelant's goods by fire without negligence, it was found that the policies held by the carrier on cargo were not direct insurance on the goods, but covered only insurance of the carrier's own risk. They were therefore worthless to the shipper, although he had paid the higher rate in the expectation of insurance. The court noted that a clause calling for insurance would ordinarily be deemed "an undertaking to procure insurance elsewhere, to collect, it, and pay the proceeds to the shipper," citing the Gross Case, supra. But that construction was inadmissible because of the reference to specific policies held by the carrier, which policies, as it turned out, did not provide insurance for the shipper. Under the circumstances and out of fairness to the shipper,

the court was forced to the construction that the carrier had agreed itself to pay the shipper's loss on the same contingencies as permitted it by its own reinsurance to throw the loss on its own insurers. In the present case the clause in the tariff is quite another thing.

The owner of the Grecian did not admit liability to cargo by paying cargo against "loan receipts." Luckenbach v. W. J. McCahan Sugar Co., 248 U. S: 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522.

The libelant's exceptions to articles 8–12, inclusive, will therefore be sustained.