JOHN KECKEVOET, Appellant, v. CITY OF DUBUQUE and J. H. CARROLL, Appellees.

**Municipal corporations:** WHARVES: FEES. The right of a city to
1  impose wharfage fees within its jurisdiction does not depend solely upon the expense it has incurred in the maintenance of the wharf; as the question of such expense is dependent largely on the condition of the water front. In the instant case, however, the evidence shows an improvement to some extent of the natural conditions.

**Same:** MUNICIPAL POWER: UNREASONABLE FEES: EVIDENCE. The im-
2  position of reasonable wharfage fees by a city is a valid exercise of police power, and not an intereference with interstate commerce; but this power cannot be used for the imposition of a tonnage tax, or a port wardens fee, or other ulterior purposes.

**Same:** ENFORCEMENT OF POWER: ISSUES. Although failure to pay the wharfage fees resulted simply in a demand by the city for a removal of house boats, and payment of the fees prevented their removal, the question of the reasonableness of the wharfage charges was properly before the court.

**Same:** USE OF HARBOR: DISCRIMINATION. While a city has power to enact ordinances providing reasonable regulations for the use of a harbor, it cannot select some particular craft and prohibit its use of the harbor, except for some sound reason of public policy.

**Actions:** MISJOINDER OF CAUSES. An ordinary law action cannot be joined with an action in equity; and when tendered by an amendment it should be stricken on motion. In this action to enjoin the enforcement of an ordinance relating to wharfage fees, an amendment alleging payment of the fees under duress, and seeking to recover the same back, should have been stricken for misjoinder.

*Appeal from Dubuque District Court.*—HON. ROBERT BONSON, Judge.

WEDNESDAY, NOVEMBER 20, 1912.

ACTION to enjoin the enforcement of certain ordinances of the city of Dubuque in relation to wharfage charges and in relation to the use of the ice harbor by certain river craft. There was a trial to the court. The plaintiff's petition was dismissed, and he appeals.—*Reversed.*

*Kendine & Roedell,* for appellant.

*George T. Lyon* and *E. H. Willging,* for appellees.

EVANS, J.—For more than thirty years the plaintiff has maintained a ferry across the Mississippi river at Dubuque, and has also maintained a small boat livery. He has at all times received and landed his passengers at this end upon and from the levee or wharf of the ice harbor in the city of Dubuque. He has also at all times housed his boats in such

harbor, and has occupied a house boat in connection therewith. In 1907 the city of Dubuque enacted a certain amendment to an ordinance, the enforcement of which seriously affects the business of the plaintiff. Such amending ordinance contains the following provision:

Sec. 9.    That for the purpose of wharfage for all boats and water craft, the entire frontage of the city shall be deemed the levee (except such parts as have been heretofore excepted by the ordinances of the city). And all boats, shanty or house boats, boathouses or launch boat houses and water craft of any description landing at, anchoring or making fast within one hundred feet of such frontage, shall pay the city therefor the following amounts: All launches five ($5.00) dollars per season for each fifteen feet of frontage of the levee used, payable in advance. All shanty boats, house boats or fish houses shall pay the sum of fifteen ($15.00) dollars per year wharfage, payable in advance. All boat liveries shall pay the sum of twenty-five ($25.00) dollars per year for each twenty-five feet of levee frontage used. All boating associations erecting a building or buildings on the wharf or levee of the city shall pay twenty-five ($25.00) dollars per year as wharfage.

Sec. 10.    No shanty, house boat or fish house shall be allowed to land or remain on any part of the levee or landing within any part of the ice harbor in the city of Dubuque.

Appellant's argument states the issues as follows:

By petition as amended, appellant avers that, under a coasting license issued by the United States, he used, in interstate commerce, a gasoline boat upon the Mississippi river in transporting passengers and property to and from a point near the northwesterly shore of the ice harbor and to and from Illinois; that, incident and necessary to such traffic, he has, in the water near the natural shore of said harbor, a boathouse, house boat, barge, float or dock, and other equipment; that the defendant city unlawfully pretends to impose a wharfage charge of $1 per foot for space so occupied in said harbor; and that the defendant city and harbor master

threaten to remove said boats from said harbor. Abstract pages 2, 3, 24, 25, 28.

By answer, the defendants aver that they sought only to remove plaintiff's house boats from said harbor and, in justification therefor and the imposition of wharfage charges, pleaded the city ordinance, as amended, by which (1) the entire water front is declared a levee; (2) a wharfage charge is imposed against any and all boats and crafts landing at or anchoring within one hundred feet of such frontage; (3) no house boat is permitted to land or remain on any part of said levee or within any part of the ice harbor; and (4) the harbor master shall assign places for and remove water crafts of all descriptions. Abstract pages 4 to 13–26.

By reply, plaintiff avers that the shore and bed of said harbor was granted to the defendant city for use as an ice harbor in perpetuity and upon condition that the defendant city would establish and maintain a public levee upon the north shore thereof; that the defendant city duly authorized and empowered the United States government to dredge and otherwise improve and maintain said premises as and for a harbor in perpetuity; that the United States government did dredge and improve said premises (which constituted the bed and shores of a body of water leading to the Mississippi river), and has so maintained the same ever since; that the shores of said harbor and river front are unimproved and in their natural state; that the defendant city at no time ever constructed or maintained any wharves, docks, or landing places in said harbor or the shores thereof, or upon said river front, nor has the defendant city ever invested anything to either construct or maintain any such improvements; that the shores of said harbor and river front consist of nothing but the naked shore without any wharves or docks at which boats may land; that such landings are effected by means of a plank or gangway leading from such boat to said natural shore; that the defendant city has by no investment upon its part afforded any facilities whatever for boats in said waters or the shores thereof, nor has said city ever rendered any service or benefit to boats in that respect or any other; that such waters are navigable and free common public highways; that such ordinances, and the powers sought to be exercised thereunder are illegal and invalid in the respects, among others, as follows: (1) Be-

cause they impose wharfage charges against boats and water craft landing at or anchoring within one hundred feet of the entire unimproved water front and natural shores of said harbor in the city limits, without having provided or invested anything in any wharves, docks, or landing places, or rendering any service whatever to such boats, and without having established the levee required by the grant to said city or any other levee.    (2) Because they absolutely forbid any house boat from entering or remaining in any part of said harbor, or landing or remaining on any part of the levee, without regard to the perils of the river which necessitate a place of shelter and refuge, and although the city has not the power to prohibit the use thereof.    (3) Because they clothe the harbor master with arbitrary power to assign or remove boats to places wholly unsuitable and dangerous and without regard to the needs, convenience, or danger of the boat.    (4) Because they obstruct and burden interstate commerce, although Congress alone has power to regulate same.    (5) Because they are confiscatory and discriminatory. That the defendants attempt to remove his said boats solely because of plaintiff's refusal to pay the illegal wharfage so exacted by said ordinances.    Abstract pages 13 to 24.

By supplemental petition, plaintiff avers that, upon the vacation of the temporary injunction herein, the defendant city, acting through its mayor, harbor master, police, sewer gang, and other agencies then present, threatened to at once forcibly remove his said house boat and boathouse then in said ice harbor unless plaintiff at once paid the wharfage charges of $290 for the years 1909 and 1910, although said harbor was then frozen over with ice, and such removal would wholly destroy said property; and that, solely under such compulsion, he then paid defendants said wharfage of $290, which defendants still retain.    Abstract page 28.

In answer thereto, defendants aver that such payment was not made under compulsion, but under an arrangement whereby plaintiff's said house boats might remain in said harbor until removal thereof could be made in the spring, and upon condition that no action would be taken to recover back any part of said $290 save by petition to the city council. Abstract pages 29–30.

In reply thereto, plaintiff avers that the evidence shows that the pretended arrangements referred to are void in that the same were made, if at all, under compulsion.

The facts in the case, as distinguished from legal conclusion, are not greatly in dispute. These facts, however, are quite voluminous in their details. It is important that many of these details be incorporated in this opinion. We cannot do better at this point than to avail ourselves of the labor of counsel and to incorporate herein the substance of the "statement of facts" appearing in each brief. From appellant's statement we quote as follows:

The pleadings and proof show that in 1880 the defendant city and its inhabitants desired the United States government to provide and maintain an ice or winter harbor at Dubuque, fronting upon and connecting with the Mississippi river, to promote navigation and afford a place of shelter and safety for boats and other water craft-from the dangers of ice, storms, and other perils of the river. The then nearest harbor from Dubuque was at Quincy, Ill., to the south, and at St. Paul, Minn., to the north.

Subsequently in 1882, and in order to consummate the plan for such a harbor, certain Dubuque citizens by deed conveyed to the defendant city the bed and shores of what is known as the ice harbor, upon condition that the same be used in perpetuity as an ice harbor, and that a public levee at least one hundred feet wide be maintained on the north shore of said harbor.

Thereupon, in 1882, the defendant city by resolution authorized and empowered the United States government to improve and maintain said premises for an ice harbor in perpetuity.

Thereupon (1882–1885) the United States government at its own expense dredged said premises (which by nature constituted the bed and shores of a body of water leading to said river) so as to convert same into a navigable harbor leading into and connecting with the Mississippi river, and the United States government has since, at its own expense, so maintained the same.

The defendant city has not established any public levee upon the north shore of said harbor as required by the deed already referred to, but, in disregard of such deed, has granted to private parties for various private industries the whole of the north shore of said harbor.

The defendant city at no time ever provided, constructed, or maintained any wharves, docks, landing places, or other improvements of any kind in said harbor or the shores thereof, nor has the defendant city ever invested anything to either construct or maintain any such improvements; that the shores of said harbor, are wholly unimproved and consist of nothing but the naked shore without any wharves or docks at which boats may land for either loading or unloading passengers and property; that landings are effected by means of a plank or gangway leading from the boat or barge to such natural and unimproved shore; that the defendant city has by no investment upon its part afforded any facilities whatever for boats in said harbor and the shores thereof, nor has the defendant city ever rendered any service or benefit to boats in that respect or any other.

That the easterly part of said harbor leads to and joins with the Mississippi river, a navigable waterway extending from St. Paul, Minn., southerly to New Orleans, La.; that during the winter boats of all kinds seek said harbor to escape destruction from the moving ice in the river, and such boats remain there at anchor until the opening of navigation; that the use of the northerly shore of said harbor has been granted by the defendant city to various parties free of charge, and is in use by said parties for boat building, sand company, and other purposes; that practically the whole of the space at and toward the southerly shore of said harbor is assigned to and utilized by the United States government's boats, and the remainder of said space at and toward the southerly shore is occupied by launchhouses and launches; that the larger part of the space at and toward the westerly shore is assigned to and occupied by launches and launchhouses, which are anchored in the water near said shore during the entire year; that the space occupied by plaintiff's boats and necessary equipment is in the water near the northwesterly part of the shore of said harbor; and that there is no other space in said harbor either available or at all suitable for his said boats and the necessary equipment therefor in order to handle the interstate traffic in which he is engaged or to remain during the close of navigation.

While the defendant city's charter (section 26) gives the city council the exclusive right to license and regulate

ferries, and to establish the rates of ferriage, between Dubuque and the opposite bank of the Mississippi river, yet the city has not seen fit to exercise such right.

The defendant city's charter (section 7, par. 17) gives the "city council the power to regulate the use of wharves and public landings, fix the rate of wharfage, and regulate the stationary anchorage and mooring of all boats within the city."

Thereunder the defendant city in 1907 adopted an ordinance giving the harbor master full power to assign places for all water crafts and compel the removal thereof, declaring the entire water front a levee, imposing wharfage charges, and prohibiting house boats, among others, from landing at or remaining on any part of said levee or within any part of said ice harbor.

That in August, 1910, defendant's harbor master, under instructions of the city council, gave plaintiff notice to remove his house boats from said ice harbor within twenty-four hours, otherwise he would remove same, solely because of failure to pay said wharfage charges, and based his right so to do upon the said ordinance.

That thereupon plaintiff commenced this action and obtained a temporary restraining order.

That although such ordinance as amended purports to designate the entire water front within the defendant city and along the Mississippi river as a levee for the purpose of wharfage, except such parts as have been heretofore excepted by the ordinances of the city, yet the defendant city has never constructed any wharves, docks, or landings upon such water front, nor has the defendant city ever maintained any such improvements thereat; that the defendant has no facilities whatever on said water front for the landing of boats; that said entire water front consists of nothing but the natural unimproved shore of the river other than one or two places occupied by others under ordinances granted by the defendant city and not available for the use of this plaintiff and the public; that the said natural shore on said river front is so shallow as to make it dangerous to life and property, if not impossible, to effect a landing on said river front by boats plying said river, and that said river front has never been used, and it is impracticable and dangerous to use the same, for any such purposes; that there are no facilities whatever provided nor any source of ben-

efit whatever rendered, by the defendant city for landing boats upon said river front so designated by said ordinance as a levee, and for which the defendant city thereunder erroneously and illegally attempts to collect and enforce the payment of wharfage charges as prescribed by the terms of said ordinance as amended.

That plaintiff (who is and since birth has been a citizen of the United States) is the owner and operates a fifty-foot boat, exclusive of rudder, propelled by gasoline engine, upon the waters of said harbor and river, duly enrolled and licensed by, and under the regulations of, the United States government, for the coasting trade in carrying and transporting people and property from Iowa to Illinois and from the latter state to the former, by operating said boat across the Mississippi river from the port or harbor in the city of Dubuque, Iowa, to the port of East Dubuque, Ill.; that likewise, by an arrangement with the Chicago, Burlington & Quincy Railway Company, an Illinois corporation and interstate common carrier, plaintiff's said boats carries and honors the tickets of citizens and passengers traveling from one state to another partly by rail and partly by boat; that, because of the failure of the defendant city to provide and maintain a public levee on the north shore of said harbor as required by the deed already referred to, it is necessary for the safety of said boat and passengers thereon, in the conduct of such interstate traffic, to have a reasonable water space in said harbor, and being the space now and long since occupied by him for that purpose, in order that said boat may turn and land without collision or danger, and to maintain suitable appliances and equipment for the purpose of landing said boat and the passengers so carried, because of the shallow water toward, and the wholly unimproved condition of, the shores in said harbor; that by reason of these things, and in order to carry on said interstate commerce and as part of the appliances toward that end, it is necessary for him to maintain a barge in the water and near the shore of said harbor in order that said boat may land thereat to receive and discharge said passengers, and also what are more properly termed two barges, upon each of which a substantial and permanent house is constructed in order to afford a place of rest and shelter for said passengers in case of storms or while waiting for the boat, and which houses upon said

barges are likewise necessary to keep small boats and repair supplies in the event of accident or casualty upon the water to person or property; that furthermore such houses upon said barges are necessary to provide living quarters for those in charge of and caring for said boats and property which require attention day and night, and which are commonly termed "house boats" or "boathouses"; that house boats are a type of boat- which frequently ply the waters of the Mississippi river and touch at ports in various states along the river; that practically all boats plying said river are so equipped as to provide shelter and living quarters for those in charge and care of the boat, as well as others being carried thereon; that the plaintiff's said house boats, so called, are likewise utilized as a boat livery, consisting of seven skiffs, for use by the public, and also in reserve a thirty-foot full-decked launch, exclusive of rudder, propelled by a gasoline engine, for use in interstate commerce in the event of accident or casualty to the. larger boat already referred to; that each and all of said boats in their use upon said river touch the shores of the states of Wisconsin and Illinois; that said house boats and barge float wholly upon the water and are anchored near and about ten feet from that part of the shore already stated, the arrangement being such that one barge touches and abuts the other extending into the harbor a distance of about forty feet, and to a point where the water is of sufficient depth to permit said boat to land; that from the barge nearest the shore there is a gangplank or gangway leading from the barge to the shore in order to enable passengers to either land or reach the boat; that from the point where said gangplank reaches said shore there is an unimproved steep embankment for a distance of about thirty-five feet leading to the said railway right of way and Second street in said city; that said entire equipment, as described and owned and maintained by plaintiff, is a necessary part of the appliances by which the interstate commerce, as described, may be carried on, and but for which the same could not be done with reasonable safety or otherwise.

That there are anchored and moored near the shores of said harbor thirty-nine launchhouses and twenty-nine launches, each of which occupies shore space, so called, of from fifteen to thirty feet, and which space is so occupied and reserved for the purpose during the entire year and

from year to year; that the defendants have never assigned for plaintiff's said boats any other space in said harbor than that hereinbefore described, and that there is no other space available and suitable for the use of plaintiff's said boats in said harbor and not already occupied as before stated, and his said boats and equipment in no wise hinder or obstruct navigation upon said waters; that the chief engineer of the United States government in charge of said harbor and waters, and the person in immediate charge of the maintenance thereof, acquiesced in the space so occupied by this plaintiff; that for many years last past the plaintiff has paid to the defendant city taxes upon said boats and equipment; that the only reason for defendant's action in threatening and attempting to remove plaintiff's said house boats, so called, and thus hinder and stop the running of his said boats and the instrumentalities so engaged in interstate commerce, is his failure to pay to the defendant city the unjust and illegal wharfage charge of $145 yearly in pursuance of the defendant city's invalid ordinance already referred to; that, while defendants unjustly undertake to enforce such invalid ordinance against this plaintiff, yet they fail to do so against others likewise using space in said harbor and on said levee.

From appellee's statement we quote as follows:

John Keckevoet, the plaintiff, has been engaged in the boat business, in one form or another, in the ice harbor since 1880. This harbor is located wholly within the boundaries of the city of Dubuque, the city holding the title to its bed and shores; these having been deeded to it in 1882 by the then owners of the property.

Within the last few years this harbor became congested, due in part to the coming of the era of gasoline motor boats and extensive improvements of the river by the United States government and the fleet necessary to carry on such work, which fleet had its winter quarters in this harbor.

In 1907 the city council adopted an amendment to its 'ordinance appointing a harbor master and defining his duties and regulating public landings and wharfage'; section ten of which provides that 'no shanty, house boat or fish house shall be allowed to land or remain on any part of the levee or landing within any part of the ice harbor in

the city of Dubuque. . . .' Shortly after the adoption of the amendment the harbor master removed eleven house boats from the harbor. Plaintiff at that time conducted a boat livery, and also operated a gasoline ferry between Dubuque and East Dubuque. He was then and is now located along the northwest shore of the harbor, the most convenient and accessible location in the harbor, and occupies one hundred and forty-five feet along such shore with floats, barges, and house boats. He uses two gasoline launches in his ferry business, the largest of which is fifty feet long. He contends that all the floats, docks, barges, and house boats are an indispensable necessity to the operation of this ferry. On the East Dubuque side he has one barge about fourteen by thirty-two feet, which seems to answer the purposes.

On August 10, 1910, the city council directed the harbor master and city attorney to take steps at once to remove the house boats of the plaintiff from any part of the harbor.

On August 15, 1910, the harbor master served upon the plaintiff a notice to remove his house boats from that part of the levee or landing within the ice harbor . . . within twenty-four hours, and on the same day plaintiff commenced this action and secured an order granting a temporary injunction.

On August 17, 1910, this defendant filed its answer and also a motion to dissolve the temporary injunction. November 15, 1910, the court sustained the motion and dissolved the temporary injunction.

We omit from the foregoing some contentions of fact which have no support in the evidence.

I. The appellant challenges the validity of the ordinance on the grounds (1) that the city had no power to collect wharfage fees because it had incurred no expense in the building or maintenance of a wharf, and (2) that the ordinance was an interference with interstate commerce, and (3) that it was unreasonable and confiscatory in the rates charged, and (4) that it was discriminatory.

The first contention cannot be sustained. The right of

a city to impose wharfage fees within its jurisdiction does not arise solely out of the expense which it incurs in the maintenance of the wharf. Ordinarily it is true that the establishment and maintenance of a wharf implies more or less expense. The extent of such expense is necessarily dependent to some degree upon the natural conditions of the bank. In the case before us the evidence does show that some improvement has been made upon natural conditions. Artificial steps are maintained and some riprapping upon the banks. The wharf has been specified and established as such. The police protection of the city and its police power extend to it. The city charter of the defendant especially confers power upon it to regulate the use of wharves and fix the rate of wharfage.

1. MUNICIPAL CORPORATIONS: wharves: fees.

Neither is the exercise of such power an interference with interstate commerce. The authorities are united in holding that ordinances providing for reasonable wharfage fees are a valid exercise of police power. *Cannon v. New Orleans*, 20 Wall. 577 (22 L. Ed. 417); *Packet Co. v. Keokuk*, 95 U. S. 88 (24 L. Ed. 377); *Muscatine v. Packet Co.*, 45 Iowa, 190; *Dubuque v. Stout*, 32 Iowa, 80. But the wharfage fees exacted must be reasonable. The name cannot be used as a guise for a "tonnage tax" or a "port warden's fee," or for other ulterior purposes. *Cannon v. New Orleans, supra; Steamship v. Port Wardens*, 6 Wall. 31 (18 L. Ed. 749). These holdings are in harmony with our own to the effect that ordinances of a city must be fair and reasonable. *State Center v. Barenstein*, 66 Iowa, 249.

2. SAME: municipal power: unreasonable fees: evidence.

The serious question in the case before us is whether the ordinance under consideration fixing the wharfage fees was fair and reasonable, or whether it was confiscatory as contended by appellant. That at least several members of the city council regarded the rate as exorbitant is admitted by them as witnesses. They had only intended to collect from the appellant thereunder $50 instead of $145. The harbor

committee had agreed upon that rate, although no formal action had been taken by the city council. The city attorney testified as a witness for the defendant. On cross-examination he testified: "I know I considered $1 per foot pretty strong, and had always considered it pretty strong, and had recommended to the city council that we accept less before and would do so again." As already indicated, the expense incurred by the city in the maintenance of the wharf is very slight indeed. The business of the plaintiff is manifestly for the public convenience. It is conducted at very modest rates, and he realizes, from the business as a whole, a very modest reward for his labor. His regular rate of ferrying across the river is five cents per passenger, with a reduced rate of 2½ cents for working people. He maintains a livery of seven boats, which he rents to the public at $1 per day or fifteen cents an hour. The proof shows his earnings over and above his expense to be very modest indeed. These facts are by no means controlling upon the city council, but they throw some light upon the other testimony in the case bearing upon the question of reasonableness of rate. The ordinance is so worded that this rate applies to only a very few persons who use the river frontage. To this feature we will refer later. The ordinance rate was not at first exacted from the plaintiff. Later, however, the harbor master made demand upon him for the full rate for the years 1909 and 1910. Other craft is so classified in the ordinance as to get the benefit of a much smaller rate of wharfage fees. Practially all the north shore of this harbor is appropriated by private enterprises from which no fees whatever are exacted. The same may be said of other portions of the shore. We think it must be said that the ordinance is unreasonable at this point in the rate of wharfage charged. It is also clear from the record that great discrimination has been practiced, in fact, under this ordinance. Whether this has resulted from the particular form and classification of the ordinance, or whether its actual enforcement has been a matter of favor and partiality, is not so clear.

It is strongly urged by appellees that the question of wharfage fees is not in the case. It is said that the city has only enforced against the appellant that pro-

3. SAME: en-
   forcement of
   power: issues.

vision of the ordinance which prohibits the remaining of house boats within the harbor. A notice was served upon the appellant to remove his house boats. Upon his failure to do so the city officers proceeded to remove the same. It is said that this action had nothing to do with the collection of the wharfage fees. An examination of the evidence satisfies us that this position is not well taken. It was the failure of the appellant to pay his wharfage fees that resulted in the demand for the removal of the house boats. Members of the city council so admit in their testimony. The payment of the wharfage fees under protest stopped the threatened removal for the time being. The plaintiff's petition tendered an issue at this point. The question is therefore fairly before us in the case. It is our conclusion that the ordinance is void for unreasonableness in the respect indicated.

II. We turn now to that part of the amended ordinance known as section ten and which is quoted above. This section prohibits any "house boat . . . to land

4. SAME: use of
   harbor: dis-
   crimination.

or remain on any part of the river or landing within any part of the ice harbor of the city of Dubuque." This is prohibition and not regulation. We find nothing in the charter of the city nor in the statutes which empower the city to enact such a sweeping prohibition. The testimony shows a house boat to be a very useful and ordinary adjunct of river craft. The very purpose of the ice harbor is to furnish winter refuge to the craft that plies the river. The city has full power to enact ordinances providing reasonable regulations for the use of such harbor. We do not think, however, that it can select a particular craft and prohibit the use of the harbor thereto unless there be some reason of public policy or protection which does not appear in this record. It is urged in argument by appellee that the

harbor is becoming congested, and that some prohibitory provision is necessary. The record is not favorable to this contention by appellee. It has voluntarily devoted, if not diverted, a large part of the harbor and its shores to the use of private enterprises which were not contemplated in the original dedication of the harbor. These enterprises are doubtless advantageous to the city in the sense that they employ a large amount of labor and capital, and tend thus to increase the trade of the city; but the presence of these private enterprises does not change the duty of the city with respect to this harbor and the use to which it was originally dedicated. This provision of the ordinance is void as being in excess of the power of the city council.

III. The plaintiff paid to the city $290, under protest, pending the controversy between him and the harbor master and the city council as to the threatened removal of his house boat out of the harbor. It is the contention of the appellant that he paid the money under duress. The payment occurred long after the beginning of this suit. Thereafter the plaintiff filed a supplemental petition pleading the payment of such amount under duress and asking to recover it back. He now asks us to determine this issue and to award him judgment for the recovery of the amount so paid.

5. ACTIONS: misjoinder of causes.

Upon the filing of his supplemental petition, the defendant moved to strike it for misjoinder. Such motion being overruled, the defendant demurred on the same ground. This demurrer was also overruled. Thereupon the defendant answered, and the case proceeded to trial. There was manifest error on the part of the learned trial court as against the defendant city in overruling its objection to the misjoinder of causes of action. This error was cured, so far as the city was concerned, by the subsequent result. This branch of the plaintiff's case was purely an action at law. Either party was entitled to demand a jury. There was no warrant under the statute for joining it with the equitable action. The defendant

was entitled to the separation when it asked it in the trial. court. If we were now to proceed to a trial of this branch of the case upon its merits, we would be repeating the error of the trial court without giving the city any right of exception or appeal; it being in no position to appeal from the ruling of the district court when final judgment went in its favor there. We will therefore give no consideration to the merits of this branch of the case. We will sustain the dismissal thereof by the district court as on the ground of misjoinder and abatement, reserving the merits of the case, whatever they be, from the adjudication. This will leave the merits of the case undetermined and subject to a further action between the parties.

For the reasons indicated above, the decree of the trial court must be, and it is, *Reversed*.