STAR TRANSPORTATION COMPANY, Appellee, v. CITY OF MASON CITY et al., Appellants.

MUNICIPAL CORPORATIONS: Use and Regulation of Streets—Intercity Busses. Cities and towns have authority to license and regulate, within the municipal limits, busses which, on a plan similar to that followed by street railway companies, operate for hire between points within and points without the municipality,—

in other words, busses which do a strictly *intercity* business. (39 G. A., Ch. 115.)

**MUNICIPAL CORPORATIONS: Use and Regulation of Streets—Bus Lines.** The statutory provision (39 G. A., Ch. 115) that cities and towns may license and regulate motor vehicles which, for hire, operate upon the public streets on a plan *similar* to that followed by street railway companies refers essentially to a similarity in the *use* of the streets.

**MUNICIPAL CORPORATIONS: Ordinances—Reasonableness.** An ordinance which is regulatory of busses operating upon the public streets is not unreasonable because it (1) excludes the busses from streets on which street cars are operated, (2) prohibits the taking on or discharging of passengers within one block of a street car line, (3) exacts a bond in the sum of $1,000, conditioned for the continuous and faithful operation of the line, or (4) exacts a $300 annual license fee for a heavy bus.

**MUNICIPAL CORPORATIONS: Use and Regulation of Streets—Unreasonable Bond.** An ordinance regulatory of motor busses, under which a licensee would be compelled to give an indemnity bond of $50,000 for each of four busses, and at a cost of $2,400 for the bonds alone, is unreasonable, and therefore void.

*Appeal from Cerro Gordo District Court.*—C. H. Kelley, Judge.

### April 3, 1923.

Action in equity, wherein plaintiff seeks to restrain the defendants from enforcing an ordinance, on the ground that the city had no power to pass the ordinance, and second, that it was so unreasonable as to render it invalid. The defendants filed a cross-petition, asking that plaintiff be enjoined from using the streets in violation of the ordinance, and until plaintiff had complied with the provisions thereof. The case was tried upon an agreed statement of facts. The trial court held that the city had no power to pass the ordinance, and that the provisions were unreasonable, and that, therefore, the ordinance was void. The cross-petition was dismissed. Defendants appeal.—*Affirmed.*

*Blythe, Markley, Rule & Smith* and *John C. Robinson,* for appellants.

*Senneff, Bliss, Witwer & Senneff* and *Fitzpatrick, Barrett & Barlow,* for appellee.

*O. N. Elliott, H. M. Reed, Reno R. Reeves, E. N. Pollard, M. J. Mitchell, V. A. Morgan,* and *W. A. Hunt, Amici Curiæ.*

PRESTON, C. J.—The written statement of facts is quite lengthy, and some matters are contained therein which appear to be not very material to the determination of the questions presented. A summary thereof, stated as briefly as may be, follows:

1. MUNICIPAL COR-
PORATIONS: use
and regulation
of streets: inter-
city busses.

Plaintiff is an Iowa corporation, having its principal place of business in the city of Mason City. Mason City is a city of the first class, operating under the commission form of government. Plaintiff is engaged in operating four passenger motor busses for hire, each of a seating capacity of 20 passengers, between Mason City and Garner to the west, Charles City to the east, and Hampton to the south. The busses pass through or use as terminals 12 different cities, towns, or villages, making two round trips per day on each route. During the summer months, the busses are operated between Mason City and Clear Lake at more frequent intervals. Passengers are loaded and unloaded at the terminus of said routes within the city. The busses do no local business from one point to another within the city, or in any of the towns named. Each trip of the busses, leaving Mason City, starts from a point at the center of the business district of defendant city, and proceeds along the paved streets to the city limits for a distance of two miles or more, thence along paved roads and streets of other towns to the destination. The paving within the city has been paid for by the owners of property abutting thereon, under the laws of special assessments. The highways outside the city have been paved under the state law, and paid for by taxes levied against abutting or adjacent land, and from the motor vehicle fund, and from Federal aid. The busses weigh 4,000 pounds each, and have pneumatic tires. The busses, operating over certain streets on regular schedules, wear out the city paving and the paving outside the city, and such use will require repairs and replacement of the paving at earlier dates than would be

required if the busses were not operated over them. A bus operated by a transfer company, of equal weight and carrying capacity with plaintiff's busses, operates on regular routes from the hotels to trains, and the license fee for said bus company is $20 per year. The highest license fee paid by any bus or taxi operating wholly within the city is $20 per year. Plaintiff has paid $22.50 registration fee for each bus, under the state law, but has paid no other license or tax. Plaintiff has invested $20,000 in its busses and property used in its business, the ordinary tax on which would be $947.35. The bond in the amount fixed by the ordinance for each bus would cost about $600 per year. There is a street car line on some of the streets over which plaintiff operates its busses. There is an interurban electric railway from Mason City to Clear Lake, on which cars are operated every hour during the summer, and at other seasons about two hours apart. The Mason City & Clear Lake Company, which owns and operates a street car line in Mason City and the interurban railway, paid out in general taxes the last year $10,465, of which $6,840 was for the tax in Mason City. The street railway company has paid $51,000 for paving taxes for paving between the rails, and $8,500 in Clear Lake. Outside the city, it has purchased and owns its own right of way, and constructed its roadbed and tracks, both in the city and in Clear Lake, as well as the interurban. The cost of construction for paving is from $2.25 to $3.25 per square yard. In the city of Mason City, the street railway company operates four regular cars, one depot car, and two interurbans. Mason City is substantially four miles square. Plaintiff has neither asked nor secured the consent of the city for the use of the streets and public places.

The ordinance in question, repealing a prior ordinance, was duly passed October 17, 1921. This action was brought October 24, 1921. The ordinance is too long to set out in full. It provides for licensing, regulating, taxing, and limiting the operation of coaches, hacks, and omnibuses, however propelled, operating upon the streets of the city, and engaged in carrying passengers for hire over fixed routes, or between fixed points and on regular time schedules within the city, or within fixed points partly within and partly without the city, or within fixed points wholly without the city, but whose route lies over the

streets, avenues, or public places within the city, and prescribing penalties for the violation thereof. The annual license fee or tax is $300 for each vehicle carrying ten or more passengers. The bond required is $50,000 for each bus, provided that, in lieu of such bond, there may be filed a liability insurance policy in a like amount, conditioned that the same shall inure to the benefit of any person in the same manner and way as the bonds provided, which is that the bond shall inure to the benefit of the estate of any person killed, and to the benefit of any person who may suffer bodily injury or property damage by reason of negligence or misconduct on the part of the driver, owner, or operator. The ordinance further provided that plaintiff could not operate its busses without procuring from the city council a license so to do, and paying the license fee; it prohibits plaintiff from operating on any street on which there is operated a street car line, and from taking on or discharging passengers within one block of any street car line. It provides that the council may grant or reject an application for a license thereunder, as it may see fit, and does not provide that the council shall give any reason for such rejection; but if rejected, other applications may be made, and likewise the city council may grant or reject the same. No license shall be granted unless and until the applicant shall first file the bond and a statement showing compliance with other provisions of the ordinance. Applicant shall file a bond with the clerk in the sum of $1,000, guaranteeing continuous and faithful operation of the vehicle or vehicles upon the route established, and according to the filed schedules during the licensed period. Application shall be accompanied by a map designating the streets over which such busses are to be operated, the time schedules to be maintained, the termini of such routes, if wholly within the city limits, and if any terminus is without the corporate limits, then the point of exit and entrance at such corporate limits. In case a license is granted, the licensee shall file written acceptance, agreeing to operate said busses over the entire route, as provided therein, and during the entire period of time provided in such schedule; and for a failure so to do, the license shall be revoked and the bond forfeited by the council. For a violation of any of the provisions of the ordinance or the license granted, or for charging more

than the schedule rates, the license may be revoked by the city council.

It may be well, at the outset, to refer to the statutes cited and relied upon by either side. Some of these are very long, and only the portions will be quoted which it is thought have a bearing on the issues presented.

Section 680 of the Code, in Title V, relating to powers of cities and towns, provides that they shall have power to make and publish ordinances not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this title, and such as seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof, and to enforce obedience to such ordinances, etc.

Code Section 695 provides that they shall have the general powers and privileges granted, and such others as are incident to municipal corporations of like character, not inconsistent with the statutes of the state, for the protection of their property and the inhabitants, and the preservation of peace and good order therein.

Code Section 753 provides that they shall have the care, supervision, and control of all public highways, streets, etc., and shall cause the same to be kept open and in repair and free from nuisances.

Section 754 of the Code provides:

"They shall have power to regulate, license and tax all carts, wagons, street sprinklers, drays, coaches, hacks, omnibuses, and every description of conveyance kept for hire; fix the rate and prices for the transportation of persons and property from one part of the city to another in the vehicles above named, and to require such persons to keep exposed to view, in or upon such vehicle, a printed table of the rates and prices so fixed; to establish stands for hackney coaches, cabs, omnibuses, drays and express wagons, and to enforce the observance and use thereof; to prescribe the width of the tires of all vehicles habitually used in the transportation of persons or articles from one part of the city to another, and require vehicles and bicycles to carry lamps giving sufficient light."

Section 754-a, Code Supplemental Supplement, 1915, provides, among other things, that cities and towns may regulate and license so-called "jitney" busses and all motor vehicles operating upon the streets, etc., and provides that jitney busses shall not be excluded from streets upon which street cars are allowed to operate. This section has been repealed, and it is unnecessary to further notice its provisions. It is referred to here because it is thought by appellant to be significant that, by Section 2 of Chapter 115, Acts of the Thirty-ninth General Assembly, the chapter which repeals Section 754-a, it is provided that the city council may prohibit such jitney bus or motor vehicle from operating on that part of any street upon which there is operated a street car line.

The thirty-eighth general assembly (Chapter 275) repealed Chapter 2-B, Title VIII, of the Supplement to the Code, 1913 (Section 1571-m et seq.), in regard to registration of motor vehicles, and enacted in lieu thereof, and as a substitute, an act in reference to the licensing and regulation of motor vehicles. The chapter contains 40 sections, and covers in detail the subject of motor vehicles. Words and phrases are defined; the operation of such vehicles is regulated to some extent, both within and without corporation limits; and the safety of the public is safeguarded. It provides (Section 19) that the registration fees imposed by this act upon motor vehicles, other than those of manufacturers and dealers, shall be in lieu of all taxes, general or local, to which motor vehicles may be subject. It fixes the license fee. It also provides (Section 28) that:

"Local authorities shall have no power to enact, enforce or maintain any ordinance, rule or regulation in any way in conflict with, contrary to, or inconsistent with the provisions of this act, or of any section or other subdivision thereof, and no such ordinance, rule or regulation of said local authorities heretofore or hereafter enacted shall have any force or effect, excepting, however, that (1) such powers as are now or may hereafter be vested in local authorities to enact ordinances and regulations, applicable equally and generally to all vehicles and other users of the highways, and providing for traffic or crossing officers or semaphores, to bring about the orderly passage of vehicles and other users of the public highways on certain portions

thereof, where the traffic is heavy and continuous, as well as (2) the powers now or hereafter vested in local authorities to license and to regulate the operation of vehicles offered to the public for hire * * * shall remain in full force and effect, and all ordinances, rules and regulations which may have been or which may be hereafter enacted in pursuance of such powers, shall remain in full force and effect; and provided, further, that local authorities may, by general rule, ordinance or regulation, exclude vehicles from any cemetery or * * * park * * * and provided, further, that the local authorities of any city, town, or city and county may impose additional restrictions to those herein contained applicable to vehicles exclusively used in the carrying of merchandise or articles of freight and of a capacity in excess of one ton in weight and may designate certain streets whereon heavy-laden vehicles may be excluded or declared to be 'one-way' streets, may further, restrict or prohibit the use of trailers.''

Chapter 115, Acts of the Thirty-ninth General Assembly, in addition to repealing Section 754-a, enacted other provisions in regard to motor vehicles. That act provides (Section 1) that cities such as defendant ''shall have power, under the restrictions and conditions hereinafter named, to regulate and license so-called jitney busses and all motor vehicles operating upon the streets and avenues of such cities and towns and engaged in carrying passengers for hire on a plan similar to that followed by street railway companies; to require such vehicles to be operated over reasonable routes and upon reasonable schedules; to impose penalties within the limits of Section 680 of the Code of 1897, for the violation of any ordinance enacted hereunder, not inconsistent and in conflict with this act.''

Section 2 provides that such city may prohibit any such jitney bus or motor vehicle from operating on that part of any such street on which there is operated a street car line operating under a franchise, except that the busses may cross the street railway, etc.

''Section 3. No license shall be granted by any such city or town unless and until the applicant therefor shall:

'' (a)   File * * * an indemnity bond * * * The said bond shall inure to the benefit of the estate of any passenger killed

and to the benefit of any passenger who may suffer bodily injury or property damage by reason of negligence * * *"

The said bond shall be in the penal sum of at least $10,000 if there are carried 10 passengers or more; provided, however, that, in lieu of the bond, a liability insurance policy may be issued, etc. It further provides (b) that, after the bond or policy has been filed and approved, the applicant must file an application for license, describing the motor car or jitney bus, horse power, number, license number, seating capacity, and so on. It further provides (Section 4) that the city may grant or reject said application, and if it is rejected, other applications may be made, and likewise the city or town council may grant or reject the same. It further provides (Section 5) that it shall be unlawful for any motor bus to thus operate on any such streets without said license, and that any person or corporation who shall operate any such motor bus without a license shall be guilty of a misdemeanor, and punished, etc.

Other amendments and changes in the motor vehicles law are made in Chapter 159, Acts of the Thirty-ninth General Assembly. This has reference more to secondhand cars, transfers, delinquent fees, etc. Section 11 of the act applies to used-car dealers. In certain cases, fees are in lieu of tax.

Appellant also refers to Section 775 of the Code, in regard to regulations by cities as to placing electric wires, etc.; and to Chapter 7, Title V, of the Code, on street improvements; to Sections 834 of the Code, 835, Code Supplement, 1913, and 836, Supplemental Supplement, 1915, in regard to duty of street railways as to paving; and to Section 809 of the Code, in regard to duty of gas and water companies in reference to paving; also, Code Section 2075, making the property of street railway companies subject to a lien for compensation of persons injured, and prior to their mortgage debts; also, Section 1056-a35, Code Supplement, 1913, defining franchises, and Section 1056-a30, Code Supplement, 1913, providing for the manner in which franchises may be granted; also, Section 717 of the Code, giving cities power to establish markets, without charge or assessment upon any wagon or vehicle or horses, or the owner thereof, bringing produce to the market through the streets contiguous thereto, on market days and evenings previous thereto.

Appellant also refers to the following sections:

Section 1571-m20, Code Supplement, 1913; Section 755 of the Code, giving cities power to restrain and regulate the driving of vehicles and to prevent immoderate driving within the limits. Chapter 275, Acts of the Thirty-eighth General Assembly, Section 2, provides that the words "license fee" shall have the same meaning as "registration fee," etc.

The ordinance in question seems to have been drawn, in part at least, on the theory that Chapter 115, Acts of the Thirty-ninth General Assembly, applied. Some of the language is that used in the statute.

Section 26 (f) of Chapter 275, Acts of the Thirty-eighth General Assembly, provides that cities and towns shall have the power to designate by ordinance suitable areas in which automobiles may be parked or left standing, and to prescribe rules governing the use of such areas.

Section 27 (d) provides that local authorities of any city or town may establish a suburban district in which the maximum speed of any vehicle shall not exceed 20 miles per hour, and a business district in which the maximum speed shall not exceed 15 miles per hour, if the city has erected signs, etc. A number of other provisions in regard to the registration of motor vehicles are found, beginning with Section 1571-m2, Code Supplemental Supplement, 1915. We do not understand either party to claim that any of these last named sections have any special application to the issues herein. Some of such provisions may have been changed by later enactments.

Section 1571-m20, Chapter 2-B, Title VIII, Code Supplement, 1913 (repealed by Chapter 275, Acts of the Thirty-eighth General Assembly), contained this language:

"Except as herein otherwise provided, local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner to whom this act is applicable any fee license or permit for the use of the public highways, or excluding any such owner from the free use of such public highways, excepting such driveways, speedways or roads as have been expressly set apart by law for the exclusive use of horses and light carriages or in any other way regulating

motor vehicles or their speed upon or use of the public high-ways,'' with certain provisos.

- Section 28 of said Chapter 275 refers to some of the mat-ters just quoted from Section 1571-m20, and seems to be the substitute for that section. We do not find in said Section 28 or in any of the existing statutes any provision as broad as that just quoted from Section 1571-m20, to the effect that local authorities have no power to require any fee, license, or permit for the use of the public highways, or in regard to excluding any owner from the free use. On the contrary, the later enact-ments do give local authorities power to license and pass cer-tain regulatory ordinances, and in some cases refer specifically to prior sections of the statute. Section 1, Chapter 115, Acts of the Thirty-ninth General Assembly. See, also, Section 28, Chapter 275, Acts of the Thirty-eighth General Assembly, quoted, where cities are given ''such powers as are now or may hereafter be vested in local authorities to enact ordinances and regulations, applicable equally and generally to all vehicles,'' etc.

We have already quoted more at length from this section. We think we have now referred to all, or substantially all, the statutes relating to motor vehicles, but the reference to some of them is quite general, because they seem to have little, if any, application to the present situation.

There are two main propositions in this case: First, whether the city has power, under existing law, to pass such an ordinance as it did; and second, whether, if so, the ordi-nance in question is, as a whole, so unreasonable as that it is void, or whether the invalid parts, if any, are so intermingled with the valid portions that it is impossible for either party to follow the valid provisions. On the one hand, appellee contends that defendant city is without power to license, tax, or regulate the operation of plaintiff's busses. To hold as broadly as ap-pellee contends would be to say that, because plaintiff has paid the state fee of $22.50, and is engaged in intercity business, it may, with its principal place of business within the city and its terminal within the city limits and on the streets, have the right, without interference or any license or regulation by the city, to park its cars—any number of cars—in the congested business

district of the city, to drive its heavy cars at any rate of speed it sees fit, to use any streets of the city, even though such streets should be set off as one-way streets, and the like,—that all these things may be done without regard to the safety or convenience of other users of the streets; and this, too, though plaintiff uses the streets for two miles in one direction and two miles in another from the city limits to the terminal in the business district. Appellee states in a brief point that the statutes do not give the city the right to regulate, license, or tax intercity busses ''which do no local business within the corporate limits of the city.'' The assumption that plaintiff does no business within the city limits is not warranted by the record. Its busses stand in the streets to load and unload its passengers, transport them over the streets, and occasionally stop at intersections to allow passengers to alight, and to take them on. Its principal place of business, its legal residence, is within the city. It may be assumed, though it does not appear in the record, and may not be very material, that it has its office and transacts other of its business in its principal place of business. It is true that it does an intercity business, but a part of it is within the city limits. We do not understand appellants to contend that they had any right to license or regulate the plaintiff or its business, in so far as that business is without the corporate limits. We may assume that they have no such right, although appellants refer to the fact that the interurban street cars operate both within and without the city, and that the paving outside the city limits will be worn out, requiring repairs. The contention is that they have the right to so regulate, within the city limits, to pass an ordinance for that purpose, and to require plaintiff to take out a license, before transacting its business within the borders of the city. If plaintiff has the right to use the streets as it contends, and use 4 cars, why not 40, or any number; and if the one company has the right, why have not any number of companies the same right? Such a situation would create confusion and disorder, and thus the streets would become congested, interfere with the rights of other lawful users of the streets, and require additional traffic policemen to preserve order and to prevent collisions and damage.

As to the rate of speed in the city, it is true that Section

28 of Chapter 275, Acts of the Thirty-eighth General Assembly, provides that limitations as to the rate of speed shall be exclusive of all other limitations in the state or any political subdivision thereof; but Section 27 (d) of the act, before quoted, expressly provides that local authorities of any city or town may establish a suburban district and the rate of speed and a slower speed in the business district.

Appellee also contends that many of the provisions of the ordinance are unreasonable, and that, therefore, the entire ordinance is void.

Plaintiff is a common carrier, a carrier of passengers for hire. Its busses are motor vehicles. Its use of the streets of the city in the prosecution of its business is a special and extraordinary use, and for private gain. The questions presented are somewhat new, and the statutes on the subject are of recent enactment, numerous, and may not be entirely clear at all points. The legislature may deem it advisable to clarify this situation, particularly in regard to the rights of common carriers passing through cities and towns, or having terminals in several different towns, and the rights of the cities and towns in regard to regulating such carriers, and perhaps, too, in regard to intercity motor vehicles which are not common carriers.

1. The public highways and streets are for the use of the public. The public may use them for all ordinary travel. The public is comprised of more persons than those who live within a certain territory, as a city or town. A person driving his automobile across the state may pass through a city, and without taking out a license. As to such, the motor vehicle acts make no distinction, as between intercity and intracity travel. However, even such travelers clearly are subject to some regulation. To illustrate, in regard to parking cars, etc. Some of the prior statutes do make a distinction in this respect, and as to drays and the like, and provide for licensing and regulating such vehicles when operated for transportation from one part of the city to another. See Code Section 754. Doubtless, plaintiff would have the same right to pass through a city or town, subject to perhaps more stringent regulations because of the size and weight of such busses. They are in a different class. These busses weigh probably 6,000 pounds, when loaded. Strictly

speaking, the right of the plaintiff to operate its busses through a city or town is not in this case. The question is whether, under the circumstances disclosed by the record, the defendant city has the right of regulation and the right to license plaintiff while it is operating its busses within the city limits. It may be thought that, if the defendant city has the right to regulate plaintiff's use of the streets and demand a license fee and other conditions for the protection of the public, other cities and towns through which plaintiff's busses pass, or where it has terminals, may do the same, and that, if other towns do the same, it would tend to show that the provisions of the ordinance in question in respect to these matters are unreasonable. But to have this effect, we would be required to assume in advance that other cities and towns would fix the same fee, or such a fee and such restrictions as would make the ordinance in question unreasonable. Furthermore, we would have to assume that the conditions would be the same, or substantially so; that the streets in the other towns are paved; that the busses pass through them for long distances,—two miles or more, as here,—and so on. A different rule ought to apply where, as here, the plaintiff has established its business as a common carrier for private gain on the streets and within the city, has a terminal therein, and uses the streets in the manner before stated. It should be understood that we are now passing only upon the questions and the situation as presented in this case.

*City of Argenta v. Keath,* 130 Ark. 334 (L. R. A. 1918 B 888, 197 S. W. 686), cited by appellee, is not directly in point, as claimed, for the reason that the Arkansas statute is quite different from the Iowa law in regard to motor vehicles. The Arkansas act provided that no owner of a motor vehicle who shall have obtained a certificate from the commissioner shall be required to obtain any other license or permit to use and operate the same, ''nor shall such owner * * * be excluded or prohibited * * * nor be required to comply with other provisions or conditions as to the use of said motor vehicles, except as in this act provided.'' Section 7429, Crawford & Moses' Digest of Statutes of Arkansas, 1921. The act contains other provisions that cities and towns may regulate and license vehicles which are used within their limits for public hire. The city of Ar-

genta passed an ordinance requiring them to pay a license fee. The court held that the city had no authority to enact an ordinance broader than the terms of the statute, and that the ordinance was, therefore, invalid. Other like cases cited are likewise under different statutes and conditions, and we shall not stop to review them.

The Iowa act, Chapter 115, supra, contains no such limitation as is found in the Arkansas act. On the contrary, it does authorize cities and towns to regulate and license jitney busses and "all motor vehicles operated on the streets and avenues of such cities and towns."

In New Jersey cases cited in the note to L. R. A. 1918 B, 892, it was held that a city empowered by statute to make and establish ordinances to license and regulate cart men and vehicles used for the transportation of passengers, baggage, etc., is not authorized to require a license tax for revenue from a cart man who has his stand and lives in another city, and who comes into the city enacting the ordinance, for several loads of furniture, to be carried to the city where he resides. The court said, in substance, that the inconvenience attendant upon the exercise by every municipality in the state of the power of excluding from its limits all unlicensed vehicles engaged in transporting goods or passengers for hire, is manifest. Its legitimate operation would require the owner of such vehicle to obtain a license, not only from the authorities of the place where his business had its headquarters, but also from every neighboring town into which their casual engagements might call them, or else to unload their vehicles at the border line. A general law having effects so burdensome is not to be anticipated, and only unequivocal language could convince a court that such legislation was intended. But the court said that the statute under consideration was not of that character; that its terms were satisfied by holding that license taxes are to be imposed only by that municipality in which the business or occupation is carried on or conducted. The tax sought to be imposed in that case was for revenue. We are not holding in this case that every city or town through which plaintiff's busses pass may impose a tax. We are passing only upon questions arising under the situation here presented. It may be that, if the rights of

plaintiff and the defendant city depended entirely upon any
one of the prior statutes, as, for instance, the statute in regard
to vehicles wholly within a city, there might be force in appel-
lee's contention. In other words, some of the provisions in the
prior statutes may be inconsistent with the later motor vehicle
acts, and yet there be no purpose on the part of the legislature
to withdraw the power to regulate, save as specified in the later
acts. The later acts do not purport to withdraw entirely or to
repeal all prior sections of the statute in regard to licensing
and regulating motor vehicles.

*Ex parte Beck* (Tex.), 241 S. W. 172, cited by appellant, is
more nearly in point. The statutes of Texas are more like our
own, and the facts are quite similar, although not precisely the
same. In the *Beck* case, an ordinance had been enacted by the
city of Temple, to the effect that "jitney" shall mean and
include any motor vehicle engaged in the business of carrying
passengers for hire over any regular route or routes, and be-
tween specific termini, stations, or places, or which is held out
or announced by sign, voice, device, or advertisement so to
operate or run, or having a particular time of departure and
arrival at any terminus, station, or place, or operating or hold-
ing out to operate for the purpose of affording a means of local
transportation similar to that ordinarily afforded by street rail-
ways, etc. It also made provisions for license fees, fines, and
certain regulations covering motor vehicles conducted for public
hire within the city limits of Temple, whether the carriage of
such passengers were confined to the city limits, or were from
any point within the city to any other point; and it provided
that the company should procure a license for each automo-
bile, etc.

The relator, Beck, was convicted for a violation of the ordi-
nance, and sued out a writ of habeas corpus. The facts in that
case, stated as briefly as may be, are that relator, with his family,
resided within the corporate limits of the city of Temple; that
he and a partner were engaged in the business of running a
garage and salesroom; that they owned a Reo speed wagon, a
motor vehicle equipped for carrying passengers; that they be-
gan to operate one of the motor vehicles for hire between the
cities of Temple and Belton, 9 miles apart, both in the same

county; that relator had registered said vehicle as an interurban motor vehicle, under the provisions of the State Highway Act, between the two cities named; that relator operated the same regularly over certain streets within the corporate limits of the city of Temple, and had stated times within which to leave a certain place inside the corporate limits and certain times for the arrival of said vehicle in the city of Belton; that the vehicle carried a sign indicating that relator charged each passenger transported a certain sum, which fare covered the transportation of passengers from within the corporate limits of Temple, as well as the entire trip between the said towns; that relator did not transport and carry for hire passengers from one point within to another point within the city of Temple, did not pick up passengers within the corporate limits thereof and haul the same to another point within said limits and charge a fare therefor; but that the passengers handled were from points within to points without the city, or vice versa. Relator had not complied with any of the provisions of the ordinances of the city of Temple with reference to paying license, as required by the ordinance before set out; he picked up, within the business district of the city of Temple, passengers at the public square, and in the hotels, and carried them over the streets mentioned to points without the corporate limits, and discharged some of them within the corporate limits of the city of Belton; and upon the return trip, he brought passengers from without the city and delivered them within the points of the city of Temple. In the application for the writ, he claimed that the ordinances of the city of Temple are in conflict with the provisions of the Highway Act, and became inoperative when the legislature passed the latter statute, and that the ordinance did not apply to the business he was conducting, because he was not operating from points within to other points within the city, but from points within to points without. The motor vehicle law of the state (Art. 7012½h, Vernon's Tex. Civ. & Cr. Stat., 1918 Supp.) contained this provision:

"But this provision shall not affect the right of incorporated cities and towns to license and regulate the use of motor vehicles for hire in such corporation."

It will be observed that this provision does not distinguish

between such transaction wholly within the city and those partly within the city and partly without. The Iowa Motor Vehicle Act contains the following provision, substantially (Section 28, Chapter 275, Acts of the Thirty-eighth General Assembly, supra):

"Local authorities shall have no power to enact * * * any ordinance * * * contrary to or inconsistent with the provisions of this act * * * excepting * * * (2) the powers now or hereafter vested in local authorities to license and to regulate the operation of vehicles offered to the public for hire."

In the *Beck* case, the court said:

"Relator contends that, having paid the license required of him by the state law as the operator of an 'interurban commercial motor vehicle,' the city of Temple has no authority to require a license of him. * * * It appears * * * that in the conduct of his business, relator makes use of four streets in the city of Temple. He picks up passengers at four points in the city. If he can do this and not be responsible to the ordinance in question because the ultimate destination of his passengers is to a point outside, or from a point outside to points within the city, he could, according to the logic of his contention, use every street in the city, go to and receive passengers from every residence within the corporate limits, provided their destination was to a point outside, and likewise deliver passengers to every house, and over every street, so long as their passage began at an outside point. If he could use one vehicle to conduct such business, with equal reason a hundred could be used for the same purpose, if the demands of the business required it. The streets are improved and maintained by the city for the ordinary use and convenience of those living within its limits, or who may be passing through, or have occasion to pass over them in the ordinary course of trade or pleasure. The streets are being used by relator in the conduct of a commercial enterprise for his own financial gain. They are a part of his business equipment. In *Sacramento v. Stage Co.*, 12 Cal. 134, the court, in discussing a question very similar to this, disposed of it in the following language, the quotation being the entire opinion: 'Under a provision of the city charter, the authorities have power "to levy and collect a license tax on theaters, and on

trades, professions, and business,'' etc. Under this section of the charter, they imposed the tax on the defendants, who are a company whose office and place of business is in the city, but whose business is the carriage of passengers from and to the city. The question is made whether, inasmuch as the larger portion of this work of transportation is done without the territorial limits of the city, the authorities have a right to levy this tax upon them; and on this question we have no doubt. The company receive. and discharge their passengers, and make contracts here for their conveyance, and they have their offices and property here, within the protection of the municipal laws. The mere fact that the business of carrying the passengers is not within the municipal limits does not make the receiving and discharging of them and for contracting for them less a business here. If this business is not a business in Sacramento, it is difficult to say where it is. The company have as much need of the protection of the laws of the corporation, and are as much interested in the police expenditures, especially for streets, roads, etc., as any other persons, and, we think, are within the words and spirit of the taxing power.' * * * The city of Temple is in no way undertaking to interfere with the authority granted by the state to an interurban commercial motor vehicle operator. It is seeking only to license and regulate one who is using the streets for business purposes under authority expressly conferred upon it by the legislature in granting its charter, and reserved to it in Section 25 of the act of the legislature of 1917, heretofore quoted, and which is still in force. Relator resides within the corporate limits of the city; his business home is there; he maintains within the city the vehicles for the operation of the enterprise; his business originates in the city, and his route begins and terminates there; he uses the streets of the city in the manner hereinbefore indicated, in the conduct of his business. Under the agreed facts, we cannot persuade ourselves that relator is not within the purview of the ordinances of the city, in the matter of requiring a license.''

The writ of habeas corpus was denied.

We think this authority is quite in point, in so far as it relates to the question of plaintiff's being engaged in intercity business, and sustains our conclusion that, under the facts in

this case, and under our statutes, defendant city has the right to enact an ordinance requiring plaintiff to take out a license and to regulate the business of plaintiff, or that part of it carried on within the city limits. See, also, *City of Carterville v. Blystone,* 160 Mo. App. 191 (141 S. W. 701); *Commonwealth v. Theberge,* 231 Mass. 386 (121 N. E. 30); *Cummins v. Jones,* 79 Ore. 276 (155 Pac. 171); *Commonwealth v. O'Neil,* 233 Mass. 535 (124 N. E. 482); *Opdyke v. City of Anniston,* 16 Ala. App. 436 (78 So. 634); *Emporium v. City of San Mateo,* 177 Cal. 622 (171 Pac. 434). In these cases, ordinances were upheld which regulated the business, and required a license for carrying on a business within and without the city, substantially as here. There is no intercity provision of law in our statutes. As said, there is no distinction therein between intercity and intracity business. It would seem that the need of regulation, while the busses are operating within the city, is no less as applied to busses doing an intercity business than as to those operating wholly within the city limits. If the size and weight of the busses were the same, the use of the streets would be precisely the same, within the city limits, whether they were intercity or intracity busses. In respect to wear and tear upon the pavement, congestion of traffic, danger to pedestrians and to other vehicles, confusion and disorder, and so on, they would be the same, and the destination of the passengers or vehicle or the rate of fare is not very material. Under the ordinance in question, it does not purport to legislate for outside territory, but legislates only regarding the use of the streets of the city. The city has power to license and regulate, unless the legislature, by the Motor Vehicle Acts, has repealed or withdrawn the power theretofore granted to cities and towns, authorizing them to license and regulate business of this character.

2.  It may be conceded that, in a number of instances, some of the prior provisions are inconsistent with some of the provisions of the Motor Vehicle Acts, and as to such, of course, the prior power granted is withdrawn. But we cannot agree with the trial court and with appellee that all, or substantially all, power theretofore granted to license and regulate motor vehicles under the circumstances of the instant case has been

2. MUNICIPAL COR-
PORATIONS: use
and regulation
of streets: bus
lines.

withdrawn. On the contrary, it will be noticed, from reading the statutes before quoted, that, running all through the later acts, power is given to the cities to license and regulate motor vehicles, and in some instances, provision is made that the powers now or hereafter vested in local authorities to license and regulate, etc., shall remain in full force and effect. To illustrate, see Section 28, Chapter 275, supra, and Sections 1 to 5, Chapter 115, Acts of the Thirty-ninth General Assembly. Section 1 of Chapter 115 refers specifically to Section 680 of the Code, and authorizes cities to impose penalties within the limits of said section, not inconsistent and in conflict with this act. The last clause just quoted is the same as a clause in Section 680, authorizing municipal corporations to enact ordinances not inconsistent with the laws of the state. The power as to regulating speed and some other matters is limited to some extent by the later acts. We deem it unnecessary to separately analyze the several sections of the statute and of the more recent motor vehicles acts cited and relied upon. It is enough to say that, construing and considering them all, we are of opinion that, under the statutes, the defendant city has the right to pass and enforce an ordinance which is reasonable, regulating the conduct of the plaintiff's business on its streets, and may require plaintiff to take out a license; that the plaintiff has not the right to conduct its business as carried on, without the consent of the city, and that the city has the right to prohibit such use unless and until plaintiff shall make application for and be granted a license in accordance with the statutes and the ordinance. That a person may make extraordinary use of the streets, as here, is a privilege, and not a matter of right, and under such circumstances, plaintiff has not the right to so use the streets without the consent of the city. See 4 McQuillin on Municipal Corporations, Section 1620; Dillon on Municipal Corporations (5th Ed.), Section 1210; Pond on Public Utilities, Section 398; *Huston v. City of Des Moines,* 176 Iowa 455, at 477; *Desser v. City of Wichita,* 96 Kan. 820 (L. R. A. 1916 D 246, 249); *Blake v. Winona & St. P. R. Co.,* 19 Minn. 418 (18 Am. Rep. 345); *Hudson Tel. Co. v. Jersey City,* 49 N. J. L. 303 (60 Am. Rep. 619); *Walla Walla City v. Walla Walla Water Co.,* 172 U. S. 1; *Frick v. City of Gary* (Ind.), 135 N. E. 346   Also, as bearing

on this question, see *East Boyer Tel. Co. v. Incorporated Town of Vail*, 166 Iowa 226, 232; *Farmers Tel. Co. v. Town of Washta*, 157 Iowa 456.

There must be a grant of some sort, either by an ordinance under delegated power or otherwise. It is argued by appellee that the court held in the *Huston* case that plaintiff was lawfully engaged in the bus business without a license. As we understand the facts in that case, plaintiff had paid all state and city license fees and taxes. Whether plaintiff is a public utility corporation, and a franchise is necessary, it is unnecessary to determine, and we do not pass upon that question.

While we shall not stop to analyze the different sections of the Code and the Motor Vehicles Act, there is one provision which should be noticed. Section 1, Chapter 115, Acts of the Thirty-ninth General Assembly, before quoted, grants power to cities to regulate and license all motor vehicles carrying passengers for hire, "on a plan similar to that followed by street railway companies," etc. It is argued by appellee that it does not carry passengers on such a plan, and that, therefore, the statute does not apply to it. To this we cannot assent. It is true, these passenger busses do not operate on a plan exactly like that followed by street railway companies. That was not contemplated, or the legislature would have so stated. It is true, as contended by appellee, that, generally speaking, a street railway is local, derives its business from the streets along which it is operated, and is in aid of the local travel upon those streets; while a commercial railway usually derives its business from a large area of territory, and not from the travel on the streets. *City of Aurora v. Elgin, A. & S. Traction Co.*, 227 Ill. 485 (81 N. E. 544, 547). Other cases are cited along the same line. Again, the term "street railway" means those street railroads which, before the introduction of electricity, used mules and horses as motor power for drawing the street car over its tracks for the use and convenience of the local public in a municipality. *Diebold v. Kentucky Traction Co.*, 117 Ky. 146 (63 L. R. A. 637, 640). And now come the newer heavy motor trucks and passenger cars. True, they do not run on rails. The shape, seating arrangement, and so on are much the same. More important still is the fact that the purpose is to transport passengers for

hire from one point to another.   However, the analogy drawn
by the legislature between these busses and street cars is not
with reference to the rates of fare, or, as we have seen, the desti-
nation of the passengers, nor with reference to their effect upon
street railways, but with reference to their similar use of the
streets: that is, the system and plan of establishing upon par-
ticular streets traffic back and forth.   The place of business is
upon the streets, their routes are definite and fixed upon cer-
tain streets, and their movements back and forth are regular
and upon fixed schedules.   The operation of these busses is very
similar to the operation of street cars.   It is evident that the
intent of the legislature was to consider the unauthorized and
constant use of the streets by heavy carriers for hire, and to
empower cities to regulate their use.

3.   Plaintiff, in the petition, assigns a number of reasons
why the ordinance is unreasonable.   We shall notice only those
which are argued, and take them up in substantially the order
in which they are presented.

3. MUNICIPAL COR-
PORATIONS: or-
dinances: rea-
sonableness.
Perhaps we should notice briefly another
matter first.   Plaintiff contends that, having
paid the registration or license fee exacted by the state law, it is
exempted from the payment of any other tax.   As we under-
stand the argument for appellant city, it concedes that plaintiff
may not be taxed by the city for ordinary property taxes or
revenue.   License fee and license tax are sometimes referred to
as though the terms were synonymous.   This is so in the argu-
ments in this case.   The plaintiff contends that, under the cir-
cumstances, the tax or license fee provided for in the ordinance
in question is a taxation exacted for the sole purpose of raising
revenue.   Appellants' claim is that it is a license fee, and that,
though some of it may incidentally be used for the upkeep of
the streets and the like, this does not invalidate the ordinance.
It may be necessary to refer to this matter again in the discus-
sion of the question as to whether the ordinance is or is not
unreasonable.

The provisions of an ordinance may, in some instances, be
so glaring as that, on the face of the ordinance itself, it should
be held to be unreasonable.   *Iowa City v. Glassman,* 155 Iowa
671, 673.   However, as a general rule, in the absence of evi-

dence of its unreasonableness, the law presumes it to be reasonable. When power to regulate, license, and control is vested by the legislature in city councils, there is a broad presumption in favor of the validity of the ordinance, and he who attacks it must show affirmatively that it is not expressly authorized by statute, or that it is, as applied to him, unreasonable and oppressive. *Huston v. City of Des Moines,* supra, at page 478; and see *Iowa City v. Newell,* 115 Iowa 55, *Snouffer v. Cedar Rapids & M. C. R. Co.,* 118 Iowa 287. Before the court will interfere, and declare a license tax to be unjust or unreasonable, a flagrant case of excessive and oppressive abuse of power by the city authorities in the levying of the tax must be established. *City of Lyons v. Cooper,* 39 Kan. 324.

In *Desser v. City of Wichita,* 96 Kan. 820, 824 (L. R. A. 1916 D 246, 248), it is said that:

"While monopolies are against public policy, this is a rule of the common law, not binding upon the legislature. Underlying all this authority is the substratum of reasonableness; for arbitrary, unreasonable, or capricious enactments are not a use, but an abuse, of legislative power. Nevertheless, those who pass ordinances for a city, like those who enact statutes for a state, are primarily the judges of what reasonable requirements are, and it is not for the courts to interfere unless and until it appears beyond question that the thing done was not a use, but a misuse, of power."

Some of these cases are on the question of the amount of the license fee, and will be referred to later.

Plaintiff first contends that the ordinance is unreasonable for that it prohibits plaintiff from operating on a street where a street car line is operated, and provides that the bus may not take on or discharge passengers within one block of a street car line. Chapter 115, Acts of the Thirty-ninth General Assembly, Section 2, authorizes cities to do this. We think the reason for it is apparent. We think, too, it is not unreasonable that they should not be allowed to take on or discharge passengers within one block of a street car line. Naturally, this would be done at a street crossing, rather than in the center of a block. In loading and unloading from one to four of these busses at one time, there would be likely to be, at certain times at least, a large

number of people congregated together. To allow this to be done at the crossing of a street upon which a street car line was operated, would be likely to endanger the safety of such persons. It is argued that this is for the protection of the street car company, and to prevent competition. This might cut both ways. If the plaintiff company were permitted to load and unload at the crossing on a street where the street car is operated, it would tend to increase the plaintiff's revenue. The safety of the public and avoiding congestion and disorder are the more important consideration. It seems to us that nothing further need be said at this point.

The ordinance requires that the company shall file a bond in the sum of $1,000, guaranteeing continuous and faithful operation of the vehicle or vehicles upon the route established and according to the schedules, during the license period, and file a written acceptance with the clerk, agreeing to operate said vehicles over the entire route, as provided therein, and provides that, for failure so to do, the license may be revoked, etc. It has been the practice in this state, and in some instances the statute requires it, that the corporation shall file an acceptance and give some security that the privilege granted would be exercised. *Huston v. City of Des Moines,* supra; *Desser v. City of Wichita,* supra. It is a regulatory provision, and we think it proper that the city should require some guaranty that the busses will be operated if the license be granted. It may be, as contended by appellee, that the city could not require plaintiff to operate the busses and maintain its schedules over the entire route between the different towns, if the ordinance means that; but there is reason for maintaining the schedules within the city limits, and for providing that, if a license is granted, the busses shall be operated. It might have an important bearing upon the question whether the council should grant or reject another application by some other company. To illustrate: Suppose there were already three or four separate bus lines being operated into the city. That might be a reason for not granting another; or suppose there were no bus line of this character running into the city, and it were thought desirable that there should be one, and plaintiff should make application, be granted a license, and then not operate its busses, thus excluding any

other person or company from doing so.  It is said by appellee that, under the ordinance, the city can arbitrarily, without any reason, reject an application for a license.  We are not prepared to so hold, and we do not so hold.  But the ordinance does not so read, nor do the stipulated facts show that defendant has or claims such right.  They do have the right, under the ordinance and under the statute, to reject.  As said, the ordinance is in the language of the statute, or substantially so.  If the ordinance provided that the council could arbitrarily, and without any reason, reject the application, the question would be here for determination.  Strictly speaking, under this record, that question is not in the case.  When, if ever, the council does attempt to do so, it will be time enough to decide the point.

The next contention of appellee is that the provision requiring ''an annual license fee or tax'' of $300 for each vehicle is unreasonable; that it is so large as to indicate that it is, in truth, intended as a revenue measure.  The rule as stated in the books is that the power given by the statute is to license, and not to tax.

''Where the grant [of power] is not made for revenue, but for regulation merely, a much narrower construction is to be applied'' than where it confers the power also of raising revenue.  But even where it is for regulation merely, ''a fee for the license may still be exacted, but it must be such a fee only as will legitimately assist in the regulation; and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers. * * * But the limitation of the license fee to the necessary expenses will still leave a considerable field for the exercise of discretion when the amount of the fee is to be determined. * * * In fixing upon the fee, it is proper and reasonable to take into account, not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licensed.  In some cases, the incidental consequences are much the most important, and, indeed, are what are principally had in view when the fee is decided upon. * * * And all reasonable intendments must favor the fairness and justness of a fee thus fixed; it will not be held

excessive unless it is manifestly something more than a fee or regulation." 2 Cooley on Taxation (3d Ed.) 1141 to 1143.

See 3 McQuillin on Municipal Corporations, Section 991; *Huston v. City of Des Moines,* 176 Iowa 455, 475; *Desser v. City of Wichita,* supra.

The name (license) cannot be used as a guise for other ulterior purposes. *Keckevoet v. City of Dubuque,* 158 Iowa 631, 643.

The mere fact that license fees may result in producing a revenue which may be paid into the city treasury for the use of a special or the general fund does not, of itself, deprive the assessment of the character of a police regulation. *Huston v. City of Des Moines,* supra, at page 474; *Ex parte Gregory,* 20 Tex. App. 210 (54 Am. Rep. 516).

In the *Keckevoet* case, a wharfage fee of $145 per year was held, under the circumstances of that case, excessive and unreasonable. But it was shown that the expense incurred by the city in the maintenance of the wharf was very slight, and that the plaintiff's earnings from his business were very small.

In the *Glassman* case, supra, the ordinance provided for a license fee of $5.00 per day, or $350 per year, for a peddler on foot, or a correspondingly greater amount for a peddler using a one-horse or a two-horse conveyance. The court said that the business involved no such extraordinary wear and tear on the streets of the city as would justify any such exaction. The peddler doubtless would cover all the streets. In the instant case, these heavy busses of two or three tons' weight pass over the streets from 30 to 40 times a day, on regular routes. Surely, there is no comparison between the two cases, in so far as it relates to the wear and tear of the streets and the cost of repaving, which, under the rule before stated, is a proper subject to be considered. A failure by the city to keep its streets in repair might result in a single damage suit for an amount many times that of the license fee. We shall not stop to review all the cases cited. In the *Desser* case, the license fee required for operating motor vehicles was $25 to $35, and an additional license of $300 to $400, according to the capacity of the vehicle. The ordinance was upheld.

The plaintiff is exempted from payment of ordinary taxes

upon its property, which, if permitted, would amount to more than the license fee. It is in competition with the street and interurban railways in a similar service. The railway company must pay for and maintain all paving between its rails and for a space on each side. It has paid out for paving within the city more than $50,000, and it must replace the paving when occasion requires. It pays general taxes upon its tracks and equipment, of something more than $10,000 per year. It operates substantially the same number of cars as plaintiff. The total general and paving tax per car paid by the street car company per year is substantially $3,500, or nearly $300 per car per month. The plaintiff's license fee is $300 per year. We do not find that the plaintiff's income is shown, nor the expense of operation, but it is probable that the income is considerable, if busses are operated even at partial capacity. The matters of taxes, wear and tear on the pavement, income, and so on, are referred to in the cases, as proper matters to be taken into consideration. See the *Desser, Glassman,* and *Keckevoet* cases, supra. We shall not take the time or space to discuss separately other matters bearing upon this question. Under the rule of the cases and the facts in this case, we are of opinion that the license fee of $300 per year and the other matters discussed are not unreasonable, and that the ordinance is valid as to them.

4. Appellee contends that the ordinance in question is unconstitutional, in that it grants to the city council arbitrary power to grant or refuse a license without any reason. We do not find that that question is raised in the pleadings. The question whether it is arbitrary has been considered in connection with another subject.

5. It is thought by appellee that the ordinance is contrary to public policy, because the busses would bring people to the city, and thus be a benefit. In that sense, it might be a benefit to the city and to persons living on the routes. This would be true, also, in regard to railroads, interurbans, etc. But it has never been and is not now the policy of the state that the cities and towns should not have supervision and control over their streets, and there is nothing in any of the recent legislation to indicate that the legislature intended to abrogate entirely their control of the streets in regard to motor vehicles, as contended

by appellee, although it must be conceded that, as to some mat-ters, the legislature has enacted, by statute, certain regulatory provisions within the city limits. Section 26, Chapter 275, Acts of the Thirty-eighth General Assembly. These relate to (a) traveling on the right-hand side of the center of the street; (f) stopping a motor vehicle parallel with the curb (but cities and towns are given power to designate by ordinance suitable areas for parking) ; (g) motor vehicles may not overtake and pass another vehicle at street intersections in the business districts; (j) vehicles may not be left standing on a street in the business district within 15 feet of the corner or within 15 feet of a hy-drant; (k) or within 15 feet of a theater entrance, etc. As to matters so expressly covered, the city may not enact ordinances inconsistent therewith.

6. Finally, it is contended by appellee that the ordinance is unreasonable because of the requirement that plaintiff shall give a bond in the sum of $50,000 for each bus; that such a bond is prohibitive. The bond should be in a substantial amount. The statute itself, Chapter 115, Section 3, Acts of the Thirty-ninth Gen-eral Assembly, provides that it shall be at least $10,000. The bond inures to the benefit of the public, as well as the city. The statute so provides, and we held in the *Huston* case, supra, at page 473, that it was proper to do so, and further, that the size of the bond might result in keeping irresponsibles off the street, and have a tendency to make drivers more careful. It is true, as contended by appellants, that a single collision might result in the death of a number of people, wherein large damages might be recoverable. And it is true also that the plaintiff is irresponsible, in the sense that, in a few hours, it could remove all of its property to another state. There is no lien on its property, as in the case of a street railroad. Code Section 2075. But plaintiff would be required to give bonds for its four busses in the sum of $200,000, at an expense of $2,400 a year for the bonds alone, and this in addition to the license fee and other requirements. The amount of such bonds and the cost thereof are so large as to impress one at a glance that in that respect the ordinance is unreasonable and prohibi-tive. We are of opinion that this provision is so unreasonable

4. MUNICIPAL COR-PORATIONS: use and regulation of streets: un-reasonable bond.

as to render the ordinance invalid. Some of the discussion and cases cited in a prior division of the opinion are applicable to the provision now under consideration.

There is some argument as to whether there would be liability on the bond for an accident occurring outside the limits of defendant city. There may be some doubt about that, but we do not feel called upon to determine that point. The question will probably arise when, if ever, an action may be brought for such an injury.

It is further objected by appellee that the bonds must be given before they know whether a license will be granted. It is so written in the statute. We suppose there would be no liability on the bonds unless the license was granted. That is a part of the company's equipment, or rather preparation to transact business. The $300 license fee would, of course, be returned if no license were granted.

The arguments of counsel upon either side have taken a wide range. Some questions are presented which we think it unnecessary to determine at this time. The opinion is already long, and we shall not pursue the subject further. For the reason stated, we hold that the ordinance is invalid. The judgment is—
*Affirmed.*

WEAVER, EVANS, ARTHUR, and FAVILLE, JJ., concur.